**HENRY SCHEIN, INC.; Easy Dental Systems, Inc.; and Dentisoft, Inc., Appellants,**

v.

**Shelly E. STROMBOE, D.D.S.; Alan B. Helig, D.D.S.; Bart Presti, D.D.S.; Kelly Presti; and Jeanne N. Taylor, D.D.S. on behalf of themselves and all others similarly situated, Appellees.**

No. 03–99–00766–CV.

Court of Appeals of Texas, Austin.

Sept. 14, 2000.

Rehearing Overruled Oct. 12, 2000.

MACK KIDD, Justice.

This is an interlocutory appeal from a trial court order certifying a class action. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(3) (West Supp.2000). In five issues, appellants Henry Schein, Inc., Easy Dental Systems, Inc., and Dentisoft, Inc. contend that the trial court abused its discretion in certifying the class because appellees failed to satisfy certain prerequisites under subsections (a) and (b) of rule 42 of the Texas Rules of Civil Procedure. We will affirm the order granting class certification.

## FACTUAL AND PROCEDURAL BACKGROUND

Henry Schein, Inc. ("Schein") claims to be the nation's largest seller of dental office supplies and equipment. In 1995, one of Schein's subsidiaries, Easy Dental Systems, Inc., began selling two computer software packages designed to aid dentists in the management of their office records. The Windows versions of the software were called "Easy Dental Lite" and "Easy Dental for Windows." The DOS version was called "Easy Dental for DOS."

In 1998, two dentists who had purchased the software, Dr. Shelly Stromboe and Dr. Jeanne Taylor, filed suit against Schein and its subsidiaries, Easy Dental Systems, Inc. and Denti–Soft, Inc. (collectively, "Easy Dental"), seeking to hold them jointly and severally liable for breach of contract, breach of express and implied warranties, fraud, negligent misrepresentation, promissory estoppel, and violations of the Texas Deceptive Trade Practices—Consumer Protection Act (the "DTPA"). *See* Tex. Bus. & Com.Code Ann. §§ 17.41–.63 (West 1987 & Supp.2000). Specifically, Stromboe alleged that the Windows versions of the software were defective. The problems Stromboe experienced with the software ranged in severity from minor malfunctions to complete operational failures.[1] Taylor alleged that after purchas-

Jerry K. Clements, Locke, Liddell & Sapp, L.L.P., Dallas, for appellants.

David E. Dunham, Taylor & Dunham, L.L.P., Joe K. Longley, Longley & Maxwell, L.L.P., Austin, for appellees

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

---

1. These problems included difficulty installing the software; difficulty converting files from a DOS environment to a Windows environment; instability and "locking up"; recurring

ing the DOS version of the software, Easy Dental charged her for technical support despite its promise to provide the service for free. Taylor also alleged that Easy Dental sent her unsolicited software enhancements and upgrades, forcing her either to pay for the software or return it. Both Taylor and Stromboe complained that Easy Dental had falsely represented that its software would be fit for managing their office data and patient records. Shortly after filing their petition, Stromboe and Taylor filed a motion requesting certification of a nationwide class of similarly situated plaintiffs, which they alleged to be approximately 20,000 in number.

From November to July 1998, the parties conducted extensive discovery regarding the merits of the case and the propriety of class certification. Following a five-day evidentiary hearing on the issue of class certification, the trial court signed an order granting appellees' motion for class certification on November 1, 1999.[2] The trial court divided the plaintiff class into two subclasses—the "Windows subclass" and the "DOS subclass." The Windows subclass included "[a]ll purchasers of Easy Dental Windows software prior to Easy Dental 98, including Easy Dental Lite and Easy Dental version 2.0, 2.1, 2.39, 2.41, 3.0, 3.01, 3.02 and 3.03." The DOS subclass included "[a]ll purchasers and/or persons who received Easy Dental DOS software releases up to and including version 10.0." The trial court named Stromboe representative of the Windows subclass. Dr. Alan Helig and Dr. Kelly Presti were appointed representatives of the DOS subclass.[3] On November 16, 1999, the trial court issued findings of fact and conclusions of law, stating in part:

In light of the amount any individual Plaintiff could recover in this case and the fact that Plaintiffs are owners and operators of small businesses, the Court finds that the economics of pursuing their claims individually would not be feasible for the members of both the DOS and Windows subclasses. The joinder of all members is not practicable in view of the size of the class and judicial economy, the nature of the action, geographical locations of class members, and the likelihood that class members would be unable to prosecute individual lawsuits.

Easy Dental then filed this interlocutory appeal, maintaining that the trial court abused its discretion in certifying the class under rule 42(b)(4) because (1) common issues do not predominate over individual issues; (2) the trial court failed to conduct a proper conflict-of-law analysis; (3) the claims of the class representatives are not typical of the absent class members' claims; and (4) the class representatives will not adequately represent the interests of the absent class members. Finally, Easy Dental argues that mandatory class certification under rule 42(b)(1)(A) is improper because (5) the suit is one primarily for monetary damages, rather than injunctive relief.

## STANDARD OF REVIEW

■■■ Trial courts enjoy broad discretion in deciding whether to grant or deny a motion for class certification. *See Rainbow Group, Ltd. v. Johnson,* 990 S.W.2d

operating errors; inaccurate account statements; printing difficulties; data corruption; lost information and transactions; and slow processing.

2. By the time the trial court ordered class certification, appellees had amended their petition to assert additional claims for unjust enrichment, declaratory judgment, and a cause of action under Texas's Unsolicited Goods Statute. *See* Tex. Bus. & Com.Code Ann. §§ 35.42, .45 (West 1987).

3. During the class certification hearings, the trial court ruled that Taylor was not an adequate representative for the DOS subclass. The trial court then recessed and provided appellees an opportunity to name a more suitable class representative. During that time, appellees amended their petition to add two alternative DOS class representatives, Dr. Helig and Dr. Presti.

351, 356 (Tex.App.—Austin 1999, pet. dism'd); *Vinson v. Texas Commerce Bank-Houston, N.A.*, 880 S.W.2d 820, 823 (Tex.App.—Dallas 1994, no writ). On appeal, our review is strictly limited to determining whether the trial court abused its discretion in ordering class certification. *See Rainbow Group, Ltd.*, 990 S.W.2d at 356; *Vinson*, 880 S.W.2d at 823. We may not substitute our judgment for that of the trial court. *See Rainbow Group, Ltd.*, 990 S.W.2d at 356; *Vinson*, 880 S.W.2d at 823. That the trial court, in the opinion of the appellate court, made an error in judgment does not alone demonstrate an abuse of discretion. *See Rainbow Group, Ltd.*, 990 S.W.2d at 356; *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ). Rather, a trial court abuses its discretion in certifying a class if it fails to properly apply the law to the undisputed facts or acts arbitrarily, unreasonably, or without reference to any guiding principles. *See Rainbow Group, Ltd.*, 990 S.W.2d at 356; *Vinson*, 880 S.W.2d at 823. A trial court does not abuse its discretion if its decision is based on conflicting evidence. *See Rainbow Group, Ltd.*, 990 S.W.2d at 356; *Vinson*, 880 S.W.2d at 823.

▮ In deciding whether to grant class certification, a trial court may consider the pleadings and other material in the record, along with any evidence presented at the hearing. *See Rainbow Group, Ltd.*, 990 S.W.2d at 356–57; *Employers Cas. Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self-Ins. Fund*, 886 S.W.2d 470, 474 (Tex.App.—Austin 1994, writ dism'd w.o.j.). The evidence on which a trial court bases its certification ruling need not be in a form necessary to be admissible at trial. *See Texas Commerce Bank Nat'l Ass'n v. Wood*, 994 S.W.2d 796, 801 (Tex. App.—Corpus Christi 1999, pet. dism'd); *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 615 (Tex.App.—Texarkana 1995, writ dism'd). In our review of the trial court's decision, we view the evidence in the light most favorable to the trial court's action and entertain every presumption in favor of its judgment. *See Rainbow Group, Ltd.*, 990 S.W.2d at 357; *Vinson*, 880 S.W.2d at 823.

## GENERAL REQUIREMENTS OF CLASS CERTIFICATION

The Texas Supreme Court recently observed that "[w]hen properly applied the class action device is unquestionably a valuable tool in protecting the rights of our citizens." *Southwestern Refining Co., Inc. v. Bernal*, 22 S.W.3d 425, 439 (Tex.2000). Indeed, class action suits furnish an efficient means for numerous claimants with a common complaint to obtain a remedy where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages. *See Nissan Motor Co., Ltd. v. Fry*, 27 S.W.3d 573, 581 (Tex. App.—Corpus Christi 2000, no pet. h.) (citing *General Motors v. Bloyed*, 916 S.W.2d 949, 952–53 (Tex.1996)). Quoting the United States Supreme Court, the Texas Supreme Court noted in *Bernal*:

> [T]he very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Bernal*, at 439 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). At the same time, the Texas Supreme Court cautioned that "fairness and justice to all concerned require adherence to certification standards," and it insisted that courts perform a "rigorous analysis" before ruling on a motion for class certification so as to ensure that all of the prerequisites have been met. *See id.*

In this case, the trial court found that all requirements for class certification had

been satisfied under rule 42(a) and rule 42(b)(4). Rule 42(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Tex.R. Civ. P. 42(a). These four factors are commonly referred to respectively as the requirements for "numerosity," "commonality," "typicality," and "adequacy of representation." *See, e.g., Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 150 (Tex. App.—Austin 1995, writ dism'd w.o.j.). Having determined that the four preliminary requirements under subsection (a) were satisfied, the trial court in this case certified the class under subsection (b)(4).[4] Certification under rule 42(b)(4) is appropriate when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Tex.R. Civ. P. 42(b)(4). Matters pertinent to these findings include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B)

the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

■ Although the class proponents bear the burden of establishing that all four requirements of rule 42(a) and at least one of the requirements under rule 42(b) are satisfied, *see Rainbow Group, Ltd.,* 990 S.W.2d at 356, they are not required to prove a prima facie case of liability or make an extensive evidentiary showing to be entitled to class certification. *See Tana Oil & Gas Corp. v. Bates,* 978 S.W.2d 735, 739 (Tex.App.—Austin 1998, no pet.); *Union Pac. Resources Co. v. Chilek,* 966 S.W.2d 117, 120 (Tex.App.—Austin 1998, pet. dism'd w.o.j.); *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 647 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.).

## DISCUSSION

### Certification under TRCP 42(b)(1)(A)

We begin by addressing Easy Dental's contention that the trial court abused its discretion in certifying the class under rule 42(b)(1)(A) because appellees seek as their primary relief monetary damages rather than injunctive relief.[5] We need not reach

---

**4.** As we note in our discussion of Easy Dental's first point of error, the trial court also certified the class under rule 42(b)(1)(A). However, because appellees concede that mandatory class certification under that subsection was inappropriate, or at least unintended, our discussion will be limited to determining whether the trial court's certification of a rule 42(b)(4) opt-out class was proper.

**5.** Certification of a mandatory class under rule 42 is proper only if the prerequisites of subdivision (a) are satisfied and, in addition, "the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying

adjudications ... which would establish incompatible standards of conduct for the party opposing the class...." Tex.R. Civ. P. 42(b)(1). At least one court of appeals has held that situations where some plaintiffs may win a monetary judgment while others may lose on identical facts do not present a risk of "inconsistent or varying adjudications," as contemplated under the rule. *See St. Louis Southwestern Ry. Co. v. Voluntary Purchasing Groups, Inc.,* 929 S.W.2d 25, 32 (Tex.App.—Texarkana 1996, no writ) (no risk of inconsistency exists where defendant is liable for damages to one plaintiff but not another). *But see Adams v. Reagan,* 791 S.W.2d 284, 292 (Tex.App.—Fort Worth 1990, no writ)

the merits of this argument, though, because appellees expressly waived any certification under rule 42(b)(1)(A) both in their brief and at oral argument, explaining that they have no intention of trying the case as a mandatory class action under rule 42(b)(1)(A). In response, Easy Dental cites rule 42(e) of the Texas Rules of Civil Procedure and asserts that appellees cannot waive the trial court's certification under rule 42(b)(1)(A) without first obtaining the trial court's approval. *See* Tex.R. Civ. P. 42(e) ("A class action shall not be dismissed or compromised without the approval of the court, and notice of the dismissal or compromise shall be given to all members of the class in such a manner as the court directs."). However, appellees are not attempting to dismiss or compromise their causes of action. Rather, they are merely conceding that certification of a *mandatory class* under rule 42(b)(1) is inappropriate in this case and are indicating their intention to proceed only as an opt-out class under rule 42(b)(4).

■ Even if we were to hold that the trial court's certification under rule 42(b)(1) was an abuse of discretion, we would nevertheless conclude—as we do in our discussion of Easy Dental's second point of error—that certification was appropriate under rule 42(b)(4). Consequently, Easy Dental is unable to show that any alleged error by the trial court was harmful error. *See* Tex.R.App. P. 44.1(a); *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Malone v. E.I. du Pont de Nemours & Co.*, 8 S.W.3d 710, 716–17 (Tex.App.—Fort Worth 1999, pet. denied). Accordingly, we overrule Easy Dental's first point of error.

(while federal counterpart to rule may be satisfied only if absolute legal quagmire would result from varying adjudications, better state rule is to permit other considerations in determining whether certification is appropriate).

### Predominance

In its second point of error, Easy Dental argues that the trial court abused its discretion in ordering class certification under rule 42(b)(4) [6] because common questions of law and fact do not predominate. Although Easy Dental concedes that some common issues of law and fact exist, it contends that any such questions are outweighed by the proliferation of individualized questions of law and fact, specifically issues of causation, reliance, and damages. It also maintains that many of the common issues identified by the trial court are not in fact common.

■ A common question of law or fact exists when the answer as to one class member is the answer as to all class members. *See Weatherly*, 905 S.W.2d at 648; *RSR Corp. v. Hayes*, 673 S.W.2d 928, 932–33 (Tex.App.—Dallas 1984, writ dism'd). Those questions that do not produce common answers are not common questions under rule 42. *See Wente v. Georgia–Pac. Corp.*, 712 S.W.2d 253, 257 (Tex.App.—Austin 1986, no writ). In its most recent discussion of the predominance requirement, the Texas Supreme Court stated:

Courts determine if common issues predominate by identifying the substantive issues of the case that will control the outcome of the litigation, assessing which issues will predominate, and determining if the predominating issues are, in fact, those common to the class. The test for predominance is *not* whether common issues *outnumber* uncommon issues but, as one court stated, whether common or individual issues will be the object of *most of the efforts* of the litigants and the court. If, after common issues are resolved, presenting and resolving individual issues is likely to be

6. This subsection provides in relevant part: "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: ... (4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members...." Tex.R. Civ. P. 42(b).

an overwhelming or unmanageable task for a single jury, then common issues do not predominate. Ideally, a judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim.

*Bernal,* 22 S.W.3d at 434 (emphasis added) (internal quotations and citations omitted).

The supreme court then explained that the predominance requirement "is intended to prevent class action litigation when the sheer complexity and diversity of the individual issues would overwhelm or confuse a jury or compromise a party's ability to present viable claims or defenses." *Id.* at 434. The court criticized many courts of appeals for their lax application of the predominance requirement and emphasized that courts must perform a "rigorous analysis." *See id.* at 435. While observing that "it may not be an abuse of discretion to certify a class that could later fail," the supreme court stressed that "a cautious approach to class certification is essential." *Id.* Furthermore, it added that "[i]f it is not determinable from the outset that the individual issues can be considered in a manageable, time-efficient, yet fair manner, then certification is not appropriate." *Id.* Keeping these principles in mind, we now turn to the facts and circumstances of the case at hand and examine them through a prism of "rigorous analysis" to determine whether common issues predominate over the individual issues.

■■■ Our review of the record suggests that the trial court was indeed diligent in applying the rigorous analysis necessary for class certification. Certainly, there is no indication that the trial court chose to "certify now and worry later." *See id.* at 435 (expressly disapproving of such tendencies). Over the course of five days, the trial court heard extensive argument and considered an immense amount of evidence concerning all issues relevant to class cer-

tification. At the hearings, both sides elicited live testimony and together produced twelve bound volumes of documents containing more than 180 exhibits. In its findings of fact and conclusions of law, the trial court concluded that the DOS subclass shared many common issues of law and fact, including questions of (1) whether Easy Dental promised members of the subclass free and unlimited technical support; (2) whether Easy Dental breached this agreement; (3) whether Easy Dental was negligent in representing that it would provide free and unlimited technical support; (4) whether members of the subclass were denied the benefit of their bargain as a result of any failure by Easy Dental to provide such technical support; (5) whether any failure by Easy Dental to provide technical support was fraudulent or a violation of the DTPA; (6) whether members of the subclass relied upon Easy Dental's promises of free technical support and suffered damages as a result; (7) whether members of the subclass are entitled to recovery under a·claim of promissory estoppel; (8) whether Easy Dental mailed unsolicited enhancements and upgrades of DOS software to subclass members, requiring them either to purchase the software or return it; and (9) whether Easy Dental's mailing, if any, of unsolicited software enhancements and upgrades to members of the subclass was a violation of the Texas Business and Commerce Code.[7]

With respect to the Windows subclass, the trial court found that common factual and legal issues included questions of (1) whether the Windows software was defective; (2) whether members of the subclass failed to receive the benefit of their bargain; (3) whether Easy Dental's sale of the software constituted a breach of contract; (4) whether Easy Dental's representations in its advertisements and other communications with the subclass were false, misleading, or deceptive; (5) whether any of Easy Dental's misrepresentations about the Windows software violated the DTPA;

---

7. *See* Tex. Bus. & Com.Code Ann. §§ 35.42, .45 (West 1987).

(6) whether any such misrepresentations constitute an unconscionable action or course of action under the DTPA; (7) whether Easy Dental breached any of its express warranties; (8) whether Easy Dental's limitations of warranty are enforceable; (9) whether Easy Dental knowingly sold defective software; and (10) whether members of the subclass are entitled to recover under a theory of promissory estoppel.

Our review of the record in this case leads us to conclude that the trial court was correct in its determination that these issues were common and would predominate at trial over any individual issues. The depositions and documentary evidence comprising the bulk of the record directly relate to the issues referenced by the trial court in its findings of fact and conclusions of law—namely the nature of the defects in Easy Dental's software, the extent of Easy Dental's knowledge of those defects, Easy Dental's alleged uniform misrepresentations about the software and the technical support that it would provide, and Easy Dental's alleged common scheme of sending and billing class members for unsolicited software. It is clear from both the evidence in the record and the arguments of the parties at the class certification hearing that these common issues are the most heavily disputed and will be the focus of most of the trial court's and parties' efforts.

Relying on *Bernal*, Easy Dental nevertheless maintains that to the extent any of these issues are common, they do not predominate over the issues requiring individualized determinations. To address this argument adequately, we must first briefly discuss the particular circumstances in *Bernal*. The controlling issue in that case was the propriety of certifying a class action of 904 plaintiffs against Southwestern Refining Company for personal injuries they allegedly sustained as a result of a refinery tank fire in Corpus Christi, Texas. Holding that common issues did not predominate over the individual issues, the

Texas Supreme Court reversed the court of appeals' certification order and remanded the case to the trial court. *See Bernal*, at 439.

While we recognize that the supreme court's holding in *Bernal* applies with equal force to all class actions, whether they may be personal injury suits or suits based on claims of breach of contract or fraud, it is nevertheless important to note that the facts and issues in this case are quite different from those noted by the court in *Bernal*. As the supreme court observed, "Personal injury claims will often present thorny causation and damage issues with highly individualistic variables that a court or jury must individually resolve." *See id.* at 436 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Consequently, the class action will *rarely* be an appropriate device for resolving them. *See id.; see also* Fed.R.Civ.P. 23 Advisory Committee Note, 39 F.R.D. 98, 103 (1966). Under the facts of *Bernal*, resolution of the central issues of causation and damages was uniquely dependent upon each individual class member because the exposure levels and severity of the injuries varied from member to member. This was due in part to the fact that the proximity of the proposed plaintiff class members' homes to the explosion varied greatly, as did the physical location of the class members themselves at the time of the explosion. While some class members were inside their homes at the time of the explosion, others were outside, in their automobiles, or out of town. *See Bernal*, at 436. Thus, each member's dosage, proximity, activity, age, medical history, sensitivity, and credibility had to be determined individually, and the supreme court in *Bernal* concluded that under those circumstances individual issues predominated. *See id.*

In contrast to *Bernal*, the present suit is an action brought by purchasers of two related computer software applications who complain of a common design defect,

uniform misrepresentations about the availability of free technical support services, and a common scheme of sending and billing class members for unsolicited software upgrades and enhancements. As their primary measure of damages, the class members seek the benefit of their bargain and exemplary damages pursuant to liability under the DTPA. Here, we are not faced with a wide array of factors that together demand individualized inquiries into issues of causation and damages. Rather, the most critical inquiries at issue are questions of law and fact common to the entire class, including whether Easy Dental sold defective software and whether it did so knowingly; whether Easy Dental made common misrepresentations about its software and technical services; and whether Easy Dental engaged in a common scheme of sending and billing class members for unsolicited products.

Of these common issues, the breach-of-contract question is one of the most significant. Once a jury answers the question of whether the software contains a programming defect as to one class member, it will be answered as to all; if the software program on which all the software packages operate is defective, every class member has received less than the benefit of his or her bargain. Likewise, as the trial court noted in its findings of fact and conclusions of law, the issue of damages can be determined on a class-wide basis from Easy Dental's own business records because appellees seek as their primary measure of damages the disgorgement of the amounts they paid Easy Dental for the software. Consequently, the damages is-

sue will not require the time-consuming, individualized inquiries that Easy Dental predicts.[8] Finally, the issue of exemplary damages is also a common one that may be resolved by asking a jury whether Easy Dental committed the alleged actions *knowingly*, if at all. Taken together, all of appellees' complaints center around Easy Dental's common course of conduct in designing and marketing its computer software. Consequently, the focus of the trial court's inquiry will be on the conduct of Easy Dental, not on the conduct of the individual class members.

We are not persuaded by appellant's argument that individual questions involving reliance, the form and substance of every misrepresentation allegedly made to each individual class member, and the amount of each class member's consequential damages will overshadow these pivotal issues and result in an unmanageable proliferation of individual issues. To be sure, some of these issues may demand some individualized inquiry. But as we will explain, the common issues of fact and law central to this suit nevertheless predominate.

First, we point out that the issue of reliance is relevant only in regard to appellees' claims for common-law fraud. However, in practical effect, the common-law fraud allegation in this case is ancillary to and subsumed by appellees' DTPA claim,[9] which itself was merely added as a practical means of obtaining a one-time award of punitive damages. Because appellees seek disgorgement of the software's pur-

---

**8.** With respect to the damages issue, appellant analogizes the case at hand to the facts set out in a recent, post-*Bernal* opinion issued by the Texarkana court of appeals, *Entergy Gulf States, Inc. v. Butler,* 25 S.W.3d 359 (Tex. App.—Texarkana 2000, no pet. h.) (op. on reh'g). *Entergy* involved a suit by customers of an electric utility who sought to recover the damages they incurred as a result of unreasonably lengthy power outages triggered by a storm. *See Entergy,* at 361. But unlike the situation here, the class members in *Entergy* suffered varying degrees of damages from the

disruption of electricity because they were without power for different periods of time. Furthermore, unlike this case, the plaintiffs in *Entergy* included claims for personal injuries.

**9.** Consumers are not required to prove reliance in order to recover for misrepresentations under the DTPA. *See Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985); *Celtic Life Ins. Co. v. Coats,* 831 S.W.2d 592, 596 (Tex. App.—Austin 1992), *aff'd as modified,* 885 S.W.2d 96 (Tex.1994).

chase price as their primary measure of damages for breach of contract and allege the fraud and DTPA violations solely for the purpose of recovering exemplary damages, reliance is not a critical issue in this case.

■ Second, in class actions involving allegations of fraudulent misrepresentations, it is important to distinguish between those cases where the alleged misrepresentations vary in each transaction from instances where the alleged misrepresentations are substantially the same as to all class members. Certainly, when the alleged misrepresentations differ there is a danger that the class action will disintegrate into numerous individual trials. *See Wood,* 994 S.W.2d at 803; *Rio Grande Valley Gas v. City of Pharr,* 962 S.W.2d 631, 643 (Tex.App.—Corpus Christ 1997, pet. dism'd). Consequently, class certification is often inappropriate in cases involving varying misrepresentations. *See Wood,* 994 S.W.2d at 803. But in cases where the alleged misrepresentations are *substantially similar* and the defendant is alleged to have engaged in a common course of conduct, class certification may be appropriate. *See Weatherly,* 905 S.W.2d at 651; *Adams v. Reagan,* 791 S.W.2d 284, 289 (Tex.App.—Fort Worth 1990, no writ).

In this case, the misrepresentations allegedly made to each class member are substantially the same. Appellees alleged a common course of action and introduced evidence of Easy Dental's advertisements, which promise "FREE unlimited tech support." The representations in these advertisements and solicitations are the same or substantially similar in substance to the other misrepresentations allegedly made to class members, notwithstanding the various mediums by which they were communicated. We do not believe that commonality or predominance is defeated merely due to the varying methods by which similar misrepresentations were made. We therefore conclude that the essential issue of whether Easy Dental made material misrepresentations is common to all class members and will not require the type of individualized inquiries Easy Dental predicts.

■ Finally, we reiterate that the primary measure of damages appellees seek is disgorgement of the software's purchase price. While we recognize that there may be other sources of consequential damages, the mere fact that some damages may have to be computed separately for different class members does not preclude class certification. *See Health & Tennis Corp. v. Jackson,* 928 S.W.2d 583, 590 (Tex. App.—San Antonio 1996, writ denied); *Sun Coast Resources, Inc. v. Cooper,* 967 S.W.2d 525, 534 (Tex.App.—Houston [1st Dist.] 1998, pet. dism'd w.o.j.); *Angeles/Quinoco Sec. Corp. v. Collison,* 841 S.W.2d 511, 516 (Tex.App.—Houston [14th Dist.] 1992, no writ). As the trial court noted in its findings of fact and conclusions of law, these damages may be efficiently determined through proof-of-claim forms, individual damage hearings, or other manageable means. Consequently, we are confident that any individual damages issues may be resolved in a "manageable, time-efficient, yet fair manner." *See Bernal,* at 436.

■ If we were to accept Easy Dental's argument, we believe that the class action mechanism would be rendered virtually useless. Easy Dental overstates plaintiffs' burden and would demand that *every* issue be readily ascertainable from the class as a whole and that *no individual issues* remain in order to permit certification. However, rule 42 only mandates that *common issues* predominate. *See* Tex.R. Civ. P. 42(b)(4). Certainly, class certification would be practically impossible if a finding of complete commonality with respect to all issues were required.

■ Finally, as stated previously, our review is strictly limited to determining whether the trial court abused its discretion in ordering class certification. *See Rainbow Group, Ltd.,* 990 S.W.2d at 356;

*Vinson,* 880 S.W.2d at 823. Trial courts are afforded broad discretion in deciding whether to grant or deny a motion for class certification, and we may not substitute our judgment for that of the trial court merely because we reach a different conclusion. *See Rainbow Group, Ltd.,* 990 S.W.2d at 356; *Vinson,* 880 S.W.2d at 823. A trial court abuses its discretion in certifying a class only if it has failed to properly apply the law to the undisputed facts or has acted arbitrarily, unreasonably, or without reference to any guiding principles. *See Rainbow Group Ltd.,* 990 S.W.2d at 356; *Vinson,* 880 S.W.2d at 823. We apply this discretionary standard of review because the trial court, rather than the intermediate appellate court, is in the best position as fact finder to judge whether certification is appropriate, which includes making the subjective determination of whether common issues will predominate. Because of its experience handling the case, the trial court is more familiar with the issues and arguments of the parties. The appellate court, on the other hand, lacks the benefit of the trial court's unique experience and knowledge with regard to the case. We also give the trial court broad discretion because it is the court that will actually be burdened with handling and managing the litigation.

Because the facts and circumstances here as evidenced by the record provide a reasonable basis for the trial court's conclusion that common issues predominate, we are unable to conclude that the trial court abused its discretion. We therefore overrule Easy Dental's second issue.

*Choice of Law*

In its third point of error, Easy Dental complains that the trial court abused its discretion in applying Texas law to all the class members' claims. It maintains that a proper choice-of-law analysis dictates that the trial court apply the law of multiple jurisdictions, which would necessarily result in varying adjudications and thereby render the class action unmanageable. *See* Tex.R. Civ. P. 42(b)(4)(D) (courts are to consider "the difficulties likely to be encountered in the management of a class action" when determining whether common questions predominate and whether class action is superior to other available methods).

For resolving conflicts-of-law issues, Texas has adopted the "most significant relationship" test as articulated in the Restatement (Second) of Conflict of Laws (1971) (the "Restatement"). *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 679 (Tex.1990); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 420–21 (Tex.1984). In the absence of a valid choice-of-law provision, section 188(1) of the Restatement provides the general rule to apply in disputes sounding in contract: "The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles listed in § 6." [10] *Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 53 (Tex.1991) (quoting § 188(1) of the Restatement); *DeSantis,* 793 S.W.2d at 679. Section 188(2) of the Restatement provides that the following factors shall be considered in analyzing a conflicts question arising from a contract dispute: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality,

**10.** Section 6 of the Restatement lists certain policy considerations that courts are to consider when deciding what law to apply:
 (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of the interested states and the relative interests of those states in the determination of the par-

ticular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.
*Maxus,* 817 S.W.2d at 53 (quoting § 6 of the Restatement).

place of incorporation, and place of business of the parties." *Maxus*, 817 S.W.2d at 53 (quoting § 188(2) of the Restatement).

 Taking these factors into consideration, we concur with the trial court that the relevant contacts in this case favor the application of Texas law with regard to appellees' contract claims. As the trial court correctly noted in its findings of fact and conclusions of law, every licensing agreement for the Windows subclass designated Texas law as the law to apply in the event of suit. Likewise, each DOS licensing agreement that made any mention of the applicable law specified that Texas law should govern. Furthermore, both the DOS software and the Windows software were designed, developed, programmed, manufactured, and shipped from Dallas, Texas.

We reach the same conclusion with regard to the law applicable to the class members' tort-related claims for common-law fraud, negligent misrepresentation, and violations of the DTPA and Unsolicited Goods Statute. The Restatement provides that "all conflicts cases sounding in tort will be governed by the most significant relationship test as enunciated in §§ 6 and 145." *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex.1979). While still considering the specific guidance provided by section 145 [11] and section 6 of the Restatement, we remain mindful that appellees' tort-related claims are clearly derivative of, and completely interrelated with, their claims for breach of contract. Thus, we apply much the same analysis. *See Nunez v. Hunter Fan Co.*, 920 F.Supp. 716, 721

(S.D.Tex.1996). Upon considering all the relevant factors and policy considerations, we conclude that Texas law should likewise apply to the plaintiffs' remaining tort-related causes of action, all of which arise out of the parties' contractual relationships. We overrule Easy Dental's third point of error.

### Adequacy of Representation and Typicality

In its final two issues, Easy Dental (1) attacks the adequacy of the representation that the representatives of the DOS subclass will provide absent class members and (2) maintains that the claims asserted by the DOS representatives are not typical of the absent class members' claims.[12] *See* Tex.R. Civ. P. 42(a)(3), (4). As we have observed on at least one previous occasion, "typicality and adequacy of representation are closely related, 'for demanding typicality on the part of the representative helps ensure his adequacy of representation.'" *Forsyth v. Lake LBJ Inv. Corp.*, 903 S.W.2d 146, 150 n. 6 (Tex.App.—Austin 1995, writ dism'd w.o.j.) (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 485 n. 27 (5th Cir.1982)). Thus, we will address these issues together.

 Before an action may be certified, the representatives must demonstrate that their claims and defenses are typical of the claims and defenses of the class members. *See* Tex.R. Civ. P. 42(a)(3). "Class representatives satisfy the typicality requirement when they show that their claims have the same essential characteristics as those of the class as a whole." *Microsoft*, 914 S.W.2d at 613 (citing *Chevron U.S.A., Inc. v. Kennedy*, 808 S.W.2d

---

11. According to section 145 of the Restatement, in tort cases the factors a court should consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex.1979) (quoting § 145(2) of the Restatement).

12. Easy Dental does not challenge the trial court's finding that the claims asserted by the representatives of the Windows subclass are typical of the claims belonging to the absent members of the Windows subclass. Nor does it challenge the trial court's finding that the absent members of the Windows subclass will be adequately represented. Consequently, our discussion of these issues will relate only to the DOS subclass.

159, 162 (Tex.App.—El Paso 1991, writ dism'd w.o.j.)); *Wiggins v. Enserch Exploration, Inc.*, 743 S.W.2d 332, 334 (Tex. App.—Dallas 1987, writ dism'd w.o.j.). "To be typical, the named claims must arise from the same event or course of conduct giving rise to the other class members' claims. The claims must be based on the same legal theory." *Microsoft*, 914 S.W.2d at 613. However, "[t]he class representatives' claims need not be identical or perfectly coextensive." *Hi–Lo Auto Supply, L.P. v. Beresky*, 986 S.W.2d 382, 387 (Tex.App.—Beaumont 1999, no pet.). All that is required is that the representatives' claims are *substantially similar* to those held by the class as a whole. *See id.* The requisite degree of typicality in the class representatives' claims has been expressed as a "substantial similarity or a nexus between the representative's injury and the injury to the class." *Id.* (citations omitted).

■ Having surveyed the record, we conclude that the DOS representatives' claims are typical of the absent class members' claims. Just as they have asserted on behalf of the absent class members, the DOS representatives charge that Easy Dental sent and charged them for unsolicited software in violation of the Texas Unsolicited Goods Statute. *See* Tex. & Bus. Com.Code Ann. §§ 35.42, .45.[13] Likewise, the class representatives allege that Easy Dental falsely represented that it would provide consumers free and unlimited technical support. Easy Dental nevertheless contends that Presti's and Helig's fraud and DTPA claims are not typical of the class members' claims because both dentists stated that they (1) relied on oral, rather than written, misrepresentations and (2) never actually paid for the technical support for which they were billed.[14] This argument is without merit.

■ Essentially, Easy Dental invites us to consider the merits of appellees' claims, as well as the merits of its defenses to appellees' claims. However, when deciding whether to certify a class, a trial court is not to determine the merits of the suit. *See Tana Oil & Gas Corp.*, 978 S.W.2d at 741, *Employers Cas. Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self-Ins. Fund*, 886 S.W.2d 470, 473–74 (Tex.App.—Austin 1994, writ dism'd w.o.j.). Setting the merits aside, it is clear that all the claims asserted by the class representatives and those raised on behalf of the absent class members arise from the same events or course of conduct and are based on the same legal and remedial theories. *See Microsoft*, 914 S.W.2d at 613. Furthermore, the injuries alleged by the class representatives and those alleged on behalf of the absent class members are substantially similar. *See Hi–Lo Auto Supply, L.P.*, 986 S.W.2d at 387. Consequently, we hold that the trial court did not abuse its discretion with regard to this point.

■ In addition to satisfying the typicality requirement, the class representatives must also show that they will fairly and adequately protect the interests of the absent class members. *See* Tex.R. Civ. P. 42(a)(4); *Forsyth*, 903 S.W.2d at 150. For there to be adequate representation, the class representatives' interests must not be antagonistic to those of the remaining class members, and class counsel must be sufficiently qualified and experienced to prosecute the action vigorously. *See Employers Cas. Co.*, 886 S.W.2d at 475. The critical question is whether the class representatives, through their attorneys, will vigorously prosecute the class claims. *See Weatherly*, 905 S.W.2d at 652; *see also Rio Grande Valley Gas Co.*, 962 S.W.2d at 644 (class representatives must demon-

---

13. Easy Dental does not dispute that the class representatives' claims are typical of the class members' claims in this respect.

14. Presumably, most members of the DOS subclass received and relied upon *written* misrepresentations and actually *paid* for the technical support charges.

strate willingness and ability to take active role in and control litigation).

 In this case, Easy Dental does not challenge the adequacy of representation insofar as the qualifications or experience of class counsel are concerned. Rather, appellant claims that the representatives lack the requisite knowledge and commitment and will not vigorously represent the class members. We disagree.

The record provides more than a sufficient basis for the trial court's conclusion that Helig and Presti possess the degree of knowledge and commitment necessary to serve as class representatives. Both Helig and Presti provided depositions and appeared at the class certification hearing. Presti testified that in order to protect the interests of the class, he would see the case through to trial or settlement, zealously prosecute all the claims, and would not put his interests ahead of the interests of the class. Likewise, Helig testified that he would continue to prosecute the action and that, at the very least, he would place the interests of the class on the same level as his own interests. Contrary to Easy Dental's assertions, the evidence in the record does not clearly indicate that the representatives have relinquished all control over the litigation or relegated to their attorneys the task of overseeing and safeguarding the interests of the DOS subclass.

Because there is adequate evidence in the record from which the trial court could reasonably conclude that Helig and Presti will adequately represent the absent class members and that their claims are typical of the absent class members' claims, we are unable to conclude that the trial court abused its discretion. Accordingly, we overrule Easy Dental's final two issues.

### CONCLUSION

Having reviewed the record and considered the arguments of both parties, we conclude that the trial court did not abuse its discretion in ordering class certification. The trial court's order is affirmed.