NO. 12-01-00193-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


DONALD LEE O'HARA, JR., ET AL.,
§
 APPEAL FROM THE 115TH

APPELLANTS


V.
§
 JUDICIAL DISTRICT COURT OF


NORTH AMERICAN 

MORTGAGE COMPANY, §
 UPSHUR COUNTY, TEXAS

APPELLEE





 

 The trial court certified a class action brought by the O'Haras against North American
Mortgage Company for engaging in the unauthorized practice of law, and charging for those
services. North American appealed, and this court reversed and remanded for decertification,
without prejudice for refiling. North American then filed a petition for review with the supreme
court, which was denied. The O'Haras amended their Motion for Class Certification, re-defining
the class in order to satisfy our concerns about compulsory counterclaims. The trial court denied the
Motion. In two issues, the O'Haras complain that the trial court abused its discretion when it refused
to certify the class. We reverse and remand for certification of the class. 


Background

 The facts, as stated in this court's prior opinion, are not being disputed, and are as follows:


 An evidentiary hearing was held in which the parties called witnesses and admitted
documents into evidence. The undisputed evidence presented at the class certification hearing
demonstrated that North American has a standard procedure through which it prepares loan
documents. In connection with the O'Hara transaction, in October of 1994, North American approved
a loan in the amount of $60,700 relating to the transfer of property through a general warranty deed. 
A non-attorney "loan closer" for North American then originated and documented the O'Hara loan
using their computer system. Specifically, she input "variable information" into the program by
responding to questions on her computer screen. In combination, those entries and the computer
system created the O'Haras' deed of trust, note and general warranty deed, as well as other non-title
loan documents. 

 The ultimate issue in the underlying case is whether this standardized system for the
preparation of loan documents, which requires the input of data into the computer by clerical staff,
constitutes the unauthorized practice of law and violates Texas Government Code Section 83.001. 
Tex. Gov't Code Ann. § 83.001(a) (Vernon 1998). Section 83.001 states that, except for certain
professionals, no person may "charge or receive, either directly or indirectly, any compensation for
all or any part of the preparation of a legal instrument affecting title to real property, including a deed,
deed of trust, note, mortgage, and transfer or release of lien." Id. The statute provides that any sums
charged or received in violation of this provision must be returned. Tex. Gov't Code Ann. § 83.005. 
It is undisputed that each borrower for which North American processes documents is charged a
$125.00 "computer/clerical" fee. 


North American v. O'Hara, et al., No. 12-99-00394-CV (Tex. App.- Tyler May 29, 2000, pet.
dism'd w.o.j.) (not designated for publication).

 In their second issue, the O'Haras argue that the only issue before this court is whether the
new class definition meets the requirements of our prior decision, in which we held that all but the
adequacy of representation requirement were satisfied. Id. (1) North American responds that
Southwestern Refining Co. v. Bernal, 22 S.W.3d 425 (Tex. 2000), significantly changed the
parameters under which certification of class actions should be considered and, therefore, the law
of the case doctrine does not preclude reconsideration of all the issues relevant to class certification,
particularly that of predominance. 


Law of the Case

 The law of the case doctrine provides that the initial determination of questions of law will
generally be held to govern the case throughout the subsequent stages of the case. See Hudson v.
Wakefield, 711 S.W.2d 628, 630 (Tex. 1986). The doctrine applies only to questions of law and not
to questions of fact. Id. It operates to narrow the issues and provide uniformity of decisions and
judicial economy. Id. However, when, as here, there has been a change in the controlling law
between the time of the first and the second determinations, the law of the case doctrine does not
preclude a court from reconsidering its previous determination. See McCrea v. Cubilla
Condominium Corp., 769 S.W.2d 261, 263 (Tex. App.- Houston [1st Dist.] 1988, writ denied); see
also Carroll v. State, 42 S.W.3d 129, 131 (Tex. Crim. App. 2001). The supreme court's decision
in Bernal constitutes such an intervening decision. Thus, our prior determination regarding the
O'Haras' case is not binding "law of the case." Accordingly, we overrule issue two.


Standard of Review

 The O'Hara's first issue complains that the trial court erred when it denied their Motion for
Class Certification. An appellate court should reverse a trial court's certification order only if the
record shows that the trial court committed a clear abuse of discretion. E&V Slack, Inc. v. Shell Oil
Co., 969 S.W.2d 565, 567 (Tex. App.- Austin 1998, no writ). An abuse of discretion occurs if the
trial court acts without reference to any guiding principles or acts arbitrarily or unreasonably. Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985). A failure to analyze or apply the
law correctly is an abuse of discretion. Huie v. DeShazo, 922 S.W.2d 920, 927-28 (Tex. 1996);
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). And an appellate court, in reviewing a trial
court's refusal to certify, should not err in favor of certification. See Bernal, 22 S.W.3d at 434-35. 
 Although the ultimate issue at the trial court level is whether North American engaged in the
unauthorized practice of law, the question before us is whether the propriety of its conduct can and
should be decided on a class-wide basis. This court "may not consider the substantive merits of the
case, and class proponents are not required to prove a prima facie case in order to be certified as a
class." Reserve Life Ins. Co. v. Kirkland, 917 S.W.2d 836, 842 (Tex. App.- Houston [14th Dist.]
1996, no writ), rev'd on other grounds, Bernal, 22 S.W.3d at 434. However, to make a proper
analysis, "going beyond the pleadings is necessary, as a court must understand the claims, defenses,
relevant facts, and applicable substantive law in order to make a meaningful determination of the
certification issues." Castano v. American Tobacco Co., 84 F.3d 734, 742 (5th Cir. 1996). 


Class Certification 

 Under Rule 42, all class actions must satisfy four requirements: 1) numerosity ("the class is
so numerous that joinder of all members is impracticable"); 2) commonality ("there are questions of
law or fact common to the class"); 3) typicality ("the claims or defenses of the representative parties
are typical of the claims or defenses of the class"); and 4) adequacy of representation ("the
representative parties will fairly and adequately protect the interests of the class"). Tex. R. Civ. P. 
42(a).

Adequacy of Representation

 In our opinion of May 29, 2000, we held that the requirement of adequacy of representation
in this case was not satisfied and, therefore, the trial court erred when it granted the O'Haras' Motion
for Class Certification. Adequacy of representation requires that the class representatives' interests
cannot be "antagonistic" to the interests of the rest of the class. Tex. R. Civ. P. 42.(a). Secondly, the
class representatives, through their counsel, must show the court that they will vigorously prosecute
the action. Id. The Texarkana Court of Appeals has listed certain relevant factors to consider in
determining if the adequacy of representation element is satisfied: 1) adequacy of counsel; 2) potential
for conflicts of interest; 3) personal integrity of the plaintiffs; 4) whether the class is unmanageable
because of geographic limitations; 5) whether the representative plaintiffs can afford to finance the
class action; and 6) the representative plaintiffs' familiarity with the litigation and his or her belief
in the legitimacy of the action. Glassell v. Ellis, 956 S.W.2d 676, 682 (Tex. App.- Texarkana 1997,
no writ). North American argued, and we agreed, that the adequacy of representation requirement
was not satisfied in this case because of conflicts of interest between the class representatives and
numerous putative class members. 

 In North American, we explained that:


 Under Rule 97(a), if a class is certified, North American will be obligated to file compulsory
counterclaims against hundreds of putative class members who were in monetary or non-monetary
default on their home mortgage loans at the time this lawsuit was filed. (cite omitted) If North
American does not file these counterclaims, it will risk losing its remedy of judicial foreclosure and
other judicial remedies against defaulting borrowers. . . . There is a conflict of interest, therefore,
between the representative plaintiffs and putative members of the class who were in default on their
loans on the date this lawsuit was filed. . . . Because the trial court's present definition fails to meet
class certification's adequacy of representation requirement, we reverse the trial court's judgment and
remand to decertify the class. Our action is without prejudice to a further attempt by borrowers to seek
certification of a class consistent with this opinion.


North American, pg. 7-8. Our holding was based upon Texas and Fifth Circuit case law that a
lender's judicial remedies are not compulsory counterclaims in a suit by the borrower only if the
lender also has contracted for non-judicial remedies. See Thurman v. FDIC, 889 F.2d 1441 (5th Cir.
1989); Kaspar v. Keller, 466 S.W.2d 326 (Tex. Civ. App.- Waco 1971, writ ref'd n.r.e.). 

 In the current case before us, the O'Haras submitted the following revised class definition:


 [T]hose persons or other entities (i) with respect to whom North American Mortgage Company acted
as mortgagee regarding real property located within the State of Texas, and (ii) who were, from October
1, 1994, to the present, charged a "document preparation" or "computer/clerical" fee by North
American Mortgage Company for services provided in connection with the preparation of a promissory
note, deed of trust or deed, excluding, however, those borrowers whose deeds of trust do not convey
to the mortgagee/lender a right of non-judicial foreclosure.



The class is the same as was ordered decertified by our previous opinion, except for the exclusion of
borrowers who did not convey to North American a right of non-judicial foreclosure. 

 At the hearing on remand, the trial court took judicial notice of everything in evidence at the
original certification hearing. However, there had been no evidence whatsoever regarding the
presence or absence of non-judicial remedies in the class members' loan documents. The only new
evidence tendered at the second hearing was North American's stipulation that every borrower's deed
of trust provides North American with power of sale as well as a right to exercise whatever judicial
remedies may be available to it. This admission, plus the new class definition, answers our concerns
about compulsory counterclaims; therefore we hold that the adequacy of representation requirement
is now satisfied. 

Predominance

 If the 42(a) elements are satisfied, the trial court must then determine if the class action is
maintainable. Tex. R. Civ. P. 42(b). There are four subsections of 42(b), at least one of which must
be satisfied before class certification is appropriate:



 the prosecution of separate actions by or against individual members of the class would create
a risk of


 

 (A) inconsistent or varying adjudications with respect to individual members of the
class which would establish incompatible standards of conduct for the party opposing
the class, or


 (B) adjudications with respect to individual members of the class which would as a
practical matter be dispositive of the interests of the other members not parties to the
adjudications or substantially impair or impede their ability to protect their interests;
or



 the party opposing the class has acted or refused to act on grounds generally applicable to the
class, thereby making appropriate final injunctive relief or corresponding declaratory relief
with respect to the class as a whole; or

 where the object of the action is the adjudication of claims which do or may affect specific
property involved in the action; or

 the court finds that the questions of law or fact common to the members of the class
predominate over any questions affecting only individual members, and that a class action is
superior to other available methods for the fair and efficient adjudication of the controversy.



Tex. R. Civ. P. 42(b). North American maintains that not one of the 42(b) requirements are satisfied;
consequently, the class action is not maintainable. We agree that (1), (2) and (3) are not satisfied;
therefore, we will only address the issues of predominance and superiority as required by 42(b)(4).

 Under Rule 42, "common" questions must predominate over questions affecting only
individual class members. Tex. R. Civ. P. 42(b)(4). A common question exists when the answer as
to one class member is the same as to all. Spera v. Fleming, Hovenkamp & Grayson, P.C., 4 S.W.3d
805, 810 (Tex. App.- Houston 1999, no writ). Common questions that do not produce common
answers do not satisfy the Rule 42 commonality requirement. Wente v. Georgia-Pacific Corp., 712
S.W.2d 253, 257 (Tex. App.- Austin 1986, no writ). The "predominance requirement . . . is one of
the most stringent prerequisites to class certification." Bernal, 22 S.W.3d at 433. Courts determine
if common issues predominate by identifying the substantive issues that will control the outcome of
the litigation, assessing which issues will predominate, and determining if the predominating issues
are, in fact, common to the class. Id. at 434. The test for predominance is not whether common
issues outnumber uncommon issues, but whether common or individual issues will be the subject of
most of the litigant's and court's efforts. If, after common issues are resolved, presenting and
resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury,
then common issues do not predominate. Id. Ideally, a judgment in favor of the named plaintiffs
should decisively settle the entire controversy, and all that should remain is for other class members
to file proofs of claim. Id. 

Analysis

 North American maintains that the predominance requirement, under the new law of Bernal,
is not satisfied; thus the trial court did not abuse its discretion when it denied the O'Haras' Motion
for Class Certification. Its main contention is that individual issues predominate, since each
transaction would have to be reviewed to determine if the North American employee creating the
documents used any discretion in the process of creating those documents. It claims that each
borrower's loan is unique and that the same documents are not generated for each borrower. North
American takes the position that the trial court would be forced to receive evidence at trial from both
the plaintiffs and the defendants pertaining to the factual circumstances of each putative class
member's transaction, which precludes the use of a class action. We disagree. 

 The key issue in this case is whether North American's conduct in charging a fee for preparing
documents affecting title to real estate, which admittedly is the same in the case of each class member,
does or does not violate the provisions of Tex. Gov't Code Ann. § 83.001. The allegedly varying
involvement of North American's lawyers in these transactions is irrelevant to the O'Haras' claims. 
If North American is correct that having its lawyers review and direct the correction of North
American's legal document preparation work legitimizes North American's conduct, then the claims
of the entire class fail. If, on the other hand, the O'Haras are correct that North American cannot
insulate itself from liability for violating Tex. Gov't Code Ann. § 83.001 merely by having a law
firm review the real estate documents prepared by North American, then the claims of the entire class
succeed. 

 North American argues that both Bernal and Peltier Enterprises and Bank of America v.
Hilton, et al., 51 S.W.3d 616 (Tex. App.- Tyler 2000, pet. denied) preclude a finding that the
predominance issue is satisfied in this case. We disagree and distinguish both Bernal and Peltier
from the present case. In Bernal, nine hundred and four plaintiffs sought class certification in their
suit against a refining company alleging personal injuries resulting from a tank explosion at a refinery. 
Bernal, 22 S.W.3d at 428-29. The plaintiffs alleged that the tank explosion sent a plume of toxic
smoke into the air and that soot and ashes fell onto their residences and surrounding areas. Id. at 429. 
The extent of the personal injuries varied greatly among the class members, but claims included
respiratory difficulties, skin irritation, eye irritation, headaches, nausea, and death to their lawns,
plants and pets. Id. 

 The court in Bernal held that the trial court's class certification order was an abuse of
discretion because common issues of law and fact did not predominate over individual issues. Id. at
439. First, the court considered that the geographical proximity to the tank explosion in Corpus
Christi varied widely from one plaintiff to another. Id. at 436. Some plaintiffs were less than one
mile away, while others were as far away as Beaumont, which is over 250 miles away. Id. Next,
some plaintiffs were outside when the explosion occurred while others were inside their homes. Id. 
For those claiming damage to their lawns, plants and pets, homes ranged from one-half mile from the
explosion site, up to nine miles away. Id. Also, there was evidence that each plaintiff suffered
different exposure because the wind was blowing on the day of the accident and directed the plume
of smoke away from some of the residents' homes. Id. 

 The court found that the individual issues of each class member's exposure, location, age,
medical history, sensitivity and credibility on the issues of causation and damages would predominate
over the common issues of liability, and whether the plume of smoke was capable of causing the
alleged injuries. Id. Although the plaintiffs argued that models, formulae, and damage brochures
would allow them the opportunity to litigate these individual issues in six to eight weeks, the court
stated that the defendants were entitled to challenge the credibility and responsibility for each of the
personal injury claims. Id. The court concluded that the class action would result in a number of
individual trials if the defendants chose to challenge each of the plaintiffs on the issues of credibility
and responsibility. Id. Thus, class treatment would no longer be superior to other methods of
adjudication (namely individual lawsuits) and the requirements of Rule 42(b)(4) would no longer be
satisfied. Therefore, the trial court abused its discretion by certifying the class. Id. 

 In Peltier, the plaintiffs claimed that a car dealer and bank engaged in a fraudulent practice
of having the bank provide a lower interest rate to a dealer, who then kept the differential and
supplied the loan to a consumer at a higher rate. Peltier, 51 S.W.3d at 619-20. At least two of the
elements of fraud required individualized proof. It was thus clear that answering the questions of
materiality and reliance as to one plaintiff did not answer the question as to other putative class
members. Id. at 623. Also, a plaintiff with knowledge about indirect lending or with years of
experience in the car-selling business would not have been able to show "unconscionable" conduct. 
Id. at 624. Further, a class member who could not obtain credit elsewhere was in a different
circumstance than one who could. The question remained as to what each class member could or
would have done if he or she had known of the transaction between the car dealer and the bank. Id.
at 623-24. Thus, the resolution of individual issues was likely to be an overwhelming and
unmanageable task for a single jury. Consequently, we held that the trial court abused its discretion
when it certified the class. 

 Such is not the case before us, as there are no individual questions to be answered which
would require taking testimony from each of the putative members. We hold, therefore, that the
common issues predominate over the individual issues in this case and, thus, the predominance
requirement of 42(b)(4) is satisfied. 

Superiority

 A class action is superior to other methods of adjudication where any difficulties which might
arise in the management of the class are outweighed by the benefits of classwide resolution of
common issues. See Weatherly v. Deloitte & Touche, 905 S.W.2d 642, 654 (Tex. App.- Houston
[14th Dist.] 1995, writ dism'd w.o.j.). In assessing the superiority of a class action, the court may
consider: 1) class members' interest in resolving the common issues by class action; 2) the benefit
from discovery already commenced; and 3) the trial court's time and effort invested in familiarizing
itself with the dispute. See Tex. R. Civ. P. 42(b)(4); Weatherly, 905 S.W.2d at 654. We hold that,
based upon our previous discussion of predominance, class certification in the instant case is
appropriate because a class action is a superior method of adjudication, and it would be manageable
by one jury as required by Rule 42(b)(4). 

 Because the adequacy of representation, predominance and superiority requirements are
clearly present in this case, we hold that the trial court erred when it denied the O'Haras' Amended
Motion for Class Certification. (2) 


A Trial Plan

 It is improper to certify a class without knowing how the claims can and will likely be tried. 
Bernal, 22 S.W.3d at 435. Individual scrutiny by the trial court is necessary to ensure that
certification does not "restrict a party from presenting viable claims or defenses without that party's
consent." Id. It is therefore incumbent upon the trial court to provide a trial plan within the
certification order to identify the substantive issues to be decided in the case and state how the claims
would likely be tried. Id.; see also Schein, Inc. v. Stromboe, 28 S.W.3d 196, 204-06 (Tex. App.-
Austin 2000, pet. dism'd w.o.j.). More specifically, a Bernal trial plan will (1) identify each factual
and legal issue that will need to be decided in the case; (2) determine what individual issues exist in
the case and enunciate precisely how these claims will be presented at trial; and (3) propose a time
table for how long the trial would take. Because the trial court in this case denied certification, it did
not create a trial plan. The trial court shall do so upon remand.

 We reverse the judgment of the trial court and remand this cause for further proceedings
consistent with this opinion. 



 JIM WORTHEN 

 Justice



Opinion delivered June 28, 2002

Panel consisted of Worthen, J., and Griffith, J.







(DO NOT PUBLISH)
1. In our prior opinion and in the interest of justice, we analyzed all requirements of class certification, not
just that of adequacy of representation, upon which we based our reversal.
2. Through a cursory search, we located four other cases, both in Texas and other states, where class action
suits were certified based upon the same or similar causes of action and fact scenarios as this case. See Perkins v.
CTX Mtg. Co., 137 Wn.2d 93 (Wash. 1999); Michalowski v. Flagstar Bank, FSB, 2002 U.S. Dist. LEXIS 1245
(N.D. Ill. Jan. 24, 2002, no pet.); O'Sullivan v. Countrywide Home Loans, Inc., 202 F.R.D. 504 (S.D. Tex. 2001,
no pet.); Kim v. Desert Document Svcs., 2000 Wash. App. LEXIS 1216 (Wash. Ct. App. July 17, 2000, pet.
denied).