**Theresa O'SULLIVAN, and Jon Maynard, for themselves and all others similarly situated, Plaintiffs,**

v.

**COUNTRYWIDE HOME LOANS, INC. and Gregg & Valby, L.L.P., Defendants.**

**Civ.A. No. H–00–73.**

United States District Court, S.D. Texas, Houston Division.

Aug. 24, 2001.

---

**38.** *See* Fed R.Civ.P. 23(c)(4).

**39.** *See* Fed.R.Civ.P. 53(a), (b).

Mark A. Carrigan, Maxine D. Goodman, Carrigan, Lapin & Landa, LLP, Timothy M. McCloskey, McCloskey & Herberger, Joel M. Androphy, Berg & Androphy, Houston, TX, for plaintiffs.

Robert T. Mowrey, Thomas G. Yoxall, Michelle G. Hertzog, Locke, Liddell & Sapp, LLP, Dallas, TX, for Countrywide Home Loans Inc.

Diana E. Marshall, The Marshall Law Firm, Houston, TX, for Gregg & Valby.

### ORDER

HITTNER, District Judge.

Pending before the Court is the Motion for Class Certification filed by Plaintiffs Jon and Heather Maynard. Having considered the motion, submissions on file, and applicable law, together with the evidence and arguments of counsel presented at a class certification hearing conducted April 10–11, 2001, the Court determines that the motion for class certification should be granted.

### THE PARTIES

Defendant Countrywide Home Loans Inc. ("Countrywide") is a California corporation primarily involved in originating and servicing mortgage loans. Countrywide has two divisions: a retail division which originates loans at Countrywide storefronts throughout Texas and across the nation, and a wholesale division which buys loans from mortgage or loan brokers.

Gregg & Valby, L.L.P. ("Gregg & Valby") is a Texas law firm focusing primarily on the preparation of real estate loan documents. Gregg & Valby has a single office located in Houston, Texas. The current principals of the law firm are Gregory Gregg and Scott Valby.

Plaintiffs (and potential class representatives) Jon and Heather Maynard (collectively "Plaintiffs") are individuals who obtained a conventional mortgage loan from Countrywide's retail division for the purchase of a new home in June of 1999.

### CLASS ACTION CLAIMS

Plaintiffs assert a claim against Countrywide under the Texas Unauthorized Practice of Law statute, section 83.001 of the Texas Government Code ("UPL"), which provides:

### § 83.001. Prohibited Acts

(a) A person, other than a person described in Subsection (b), may not charge or receive, either directly or indirectly, any compensation for all or any part of the preparation of a legal instrument affecting title to real property, including a deed, deed of trust, note, mortgage, and transfer or release of lien.

(b) This section does not apply to:

  (1) an attorney licensed in this state;

  (2) a licensed real estate broker or salesman performing the acts of a real estate brother pursuant to The

Real Estate License Act (Article 6573a, Vernon's Texas Civil Statutes); or

(3) a person performing acts relating to a transaction for the lease, sale, or transfer of any mineral or mining interest in real property.

(c) This section does not prevent a person from seeking reimbursement for costs incurred by the person to retain a licensed attorney to prepare an instrument.

TEX. GOV'T CODE ANN. § 83.001 (Vernon 1998). Section 83.006 provides that "[a] violation of this chapter constitutes the unauthorized practice of law and may be enjoined by a court of competent jurisdiction." *Id.* § 83.006.

Plaintiffs also assert a claim against Countrywide under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(a)–(b) ("RESPA"), which provides:

(a) No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b) No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a settlement service involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(a)–(b) (2001).

After the class certification hearing, the Court dismissed Gregg & Valby from the instant suit upon Plaintiffs' motion. Plaintiffs subsequently withdrew additional claims for negligent misrepresentation and a violation of the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. Plaintiffs thereafter filed their Third Amended Complaint after obtaining leave of Court. In the amended complaint, Plaintiffs have more precisely defined the class in accordance with Federal Rule of Civil Procedure 23(c).

*FACTUAL BACKGROUND*

On June 3, 1999, Plaintiffs closed on their residential mortgage loan from Countrywide. At that time, Plaintiffs received a HUD–1 Settlement Statement ("HUD–1"). The federal government requires that lenders provide a HUD–1 to borrowers and sellers to disclose the various closing costs associated with the loan and to whom such costs are being paid. Plaintiffs' HUD–1 describes the closing and loan origination costs paid by Plaintiffs and by the seller (Silverwood Designs) to Countrywide, to the title company, and to various third parties. At line 1105, under the heading "Paid From Borrowers' Funds at Closing," Plaintiffs' HUD–1 lists a "Document Preparation Fee" to Gregg & Valby in the amount of $175.00. The column entitled "Paid From Sellers' Funds at Closing" shows that Silverwood Designs paid $50.00 of the document preparation fee to Gregg & Valby. The total document preparation fee paid to Gregg & Valby for Plaintiffs' conventional loan with deed and reflected on Plaintiffs' HUD–1 was therefore $225.00.

The HUD–1 lists various other charges paid by Plaintiffs, including a processing fee paid to Countrywide in the amount of $300.00 and an underwriting fee paid to Countrywide in the amount of $195.00. Plaintiffs, a representative of Silverwood Designs, and the settlement agent signed Plaintiffs' HUD–1, verifying, on penalty of perjury, that it is "a true and correct account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of the transaction." In this manner, the settlement agent verified that she would disburse the settlement funds in accordance with the HUD–1.

Pursuant to Texas law, only attorneys licensed in Texas may charge for preparing legal instruments affecting title to real property, e.g., deeds, deeds of trust, notes, mortgages, etc. ("legal instruments"). *See* TEX. GOV'T CODE ANN. §§ 83.001–.006. (Vernon 1998). The "document preparation fee" referenced on the HUD–1, sometimes referred to by lenders as "attorneys' fees," is the lawyer's fee for preparing the legal instruments. Generally, either the borrower or

seller (or both) pays the document preparation fee at closing. Plaintiffs' (and all other potential class members') HUD–1, however, does not disclose that Gregg & Valby paid Countrywide $130.00 of the $225.00 document preparation fee pursuant to a long-standing arrangement between the law firm and the mortgage company.

In the early 1990's, the predecessor law firm to Gregg & Valby (Gregory Gregg and Associates) and the retail division of Countrywide agreed that Countrywide would retain Gregory Gregg and Associates for all its document preparation work in Texas. Countrywide retained Gregory Gregg and Associates to ensure that the charge for document preparation could be attributed to a law firm, as required under Texas law. Pursuant to a fee schedule, Gregory Gregg and Associates agreed to charge a document preparation fee on all loans referred to the firm by Countrywide and then pay Countrywide a portion of each document preparation fee collected. The fee schedule dictated that the amount of the document preparation fee paid to Countrywide by Gregg & Valby depended upon the type of loan obtained by the borrower (i.e., conventional purchase, conventional purchase with deed, or conventional refinance). For example, on all conventional loans with deeds, such as Plaintiffs' loan, Gregg & Valby charges a $225.00 document preparation fee, of which $130.00 is then paid to Countrywide by the law firm pursuant to the fee schedule.

Gregg & Valby's payment to Countrywide is never disclosed to the borrower, nor is it disclosed to the settlement agent. At closing, the borrower and/or seller pays the document preparation fee and the settlement agent disburses a check for the full document preparation fee to Gregg & Valby. In a completely separate transaction, Gregg & Valby sends Countrywide a check for Countrywide's portion of each document preparation fee collected each month. For example, during June 1999, the month of Plaintiffs' closing, Gregg & Valby sent a check for $126,000.00 to Countrywide. This check represented Countrywide's share of the document preparation fee on approximately 1260 loans.

Before Gregg & Valby and Countrywide entered into their arrangement, Countrywide prepared its own legal instruments. Specifically, a Countrywide employee would input all of the relevant borrower, interest rate, and property data into EDGE (Countrywide's proprietary software program). EDGE would thereafter generate the relevant legal instruments. During this time period, Countrywide would charge and collect its own document preparation fee. At some point, Countrywide became aware that the preparation of legal instruments for a fee by non-lawyers constitutes the unauthorized practice of law in Texas. Countrywide therefore hired Gregory Gregg & Associates (now Gregg & Valby) to serve as Countrywide's exclusive legal provider of document preparation services.

Despite hiring Gregory Gregg & Associates, Countrywide did not change its method of using EDGE to prepare the initial set of legal documents. A Countrywide employee would still input the relevant borrower, interest rate and property data into EDGE which would subsequently produce the completed relevant legal instruments. Countrywide then faxed the legal instruments to Gregg & Valby's office. To date, Countrywide conducts its legal document preparation in the same fashion.

At Gregg & Valby, a non-lawyer employee and a non-lawyer "quality control" employee review the legal instruments. Such review is often the only review conducted by Gregg & Valby. Indeed, it is undisputed that some legal instruments faxed to Gregg & Valby from Countrywide are never reviewed by a lawyer. The amount of time it takes for Gregg & Valby workers to review the legal instruments is disputed; however, the evidence suggests that it takes somewhere between 4 to 30 minutes to review a complete set of legal instruments.

In some circumstances, the legal documents faxed to Gregg & Valby by Countrywide were reviewed by an attorney. However, such documents were neither selected nor prepared by the attorney. During the time period from 1993 until 1999, one lawyer at Gregg & Valby, Ms. Karen Miller, was responsible for reviewing all of Countrywide's legal instruments.

After its review, Gregg & Valby notifies Countrywide of any necessary changes by a

one page checklist or by a telephone call. After making any noted changes, and sometimes a second review by Gregg & Valby, a Countrywide employee generates the final set of legal instruments. This final set is then sent to the title company for closing. It is undisputed that the final set of legal instruments is prepared by a non-lawyer Countrywide employee at a Countrywide storefront and sent directly to the title company for use at closing. In most cases, Countrywide also prepares the Gregg & Valby invoice (on Gregg & Valby letterhead) for the document preparation fee. In 1997 alone, Gregg & Valby typically received between 100–200 sets of legal instruments per day for review. This massive influx of documents typically occurred toward the end of each month.

In response to Plaintiffs' assertions, Countrywide argues that its work regarding legal instruments is "clerical." Accordingly, the payment to Countrywide by Gregg & Valby is for "clerical services" that the lender purportedly provides to the law firm. Countrywide contends that the only legal work involved in preparing the legal instruments is Gregg & Valby's review of the various forms of legal instruments Countrywide maintains on EDGE [1].

### CLASS DEFINITION

Plaintiffs move to certify the following class:

> All persons in Texas who, as part of a residential real estate loan transaction with Countrywide from January 10, 1996 to the present, were charged a "Document Preparation Fee" (or portion of a document preparation fee) on their HUD–1 Settlement Statement, where Countrywide received a portion of the document preparation fee, and Gregg & Valby is listed as the provider of document preparation services.

This definition includes all individuals within the four year statute of limitations for the

Texas UPL claim, as well as individuals within the one year statute of limitations for the RESPA claim.

### CLASS CERTIFICATION UNDER RULE 23

To attain certification of the proposed class, Plaintiffs must meet each of the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *See* FED. R. CIV. P. 23(a). Because Plaintiffs seek to certify the class under Rule 23(b)(3), they must also show that common issues predominate and that class treatment is the superior method to resolve the dispute. *See* FED. R. CIV. P. 23(b)(3).

Plaintiffs bear the burden of proof on class certification. *See Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996). The district court may certify a class only if a "rigorous analysis" convinces it that all conditions set out in Rule 23 are met. *Id.* In so doing, the court must consider "how a trial on the merits would be conducted" if a class were certified. *Id.* A district court may look past the pleadings to determine if Rule 23's requirements have been met. *Id.* at 744. This necessitates looking "beyond the pleadings ... [to] understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Id.*

### A. RULE 23(A) REQUIREMENTS

#### 1. NUMEROSITY

In this case, Countrywide concedes numerosity. Accordingly, the Court need not address whether the class is so numerous that joinder of all members is impracticable. *See* FED. R. CIV. P. 23(a)(1).

#### 2. COMMONALITY

Rule 23(a)(2) requires that there are questions of law or fact common to the class.

---

1. There is some dispute concerning exactly what services Gregg & Valby provides with regard to the Countrywide legal instruments. For example, although argued extensively by Countrywide, it is unclear whether a Gregg & Valby lawyer worked with the computer programmer to ensure that EDGE generates the proper form of legal instrument for a particular loan as required by Texas law. It is also unclear whether a Gregg & Valby lawyer reviewed each of the forms currently on EDGE as required by Texas law. However, for purposes of analyzing whether Plaintiffs' UPL and RESPA claims can be certified, these facts are irrelevant. Based on the common facts described above, the Court can determine whether Plaintiffs' claim satisfies Rule 23 of the Federal Rules of Civil Procedure.

FED. R. CIV. P. 23(a)(2). "The threshold of 'commonality' is not high." *Bertulli v. Indep. Ass'n of Continental Pilots,* 242 F.3d 290, 296–97 (5th Cir.2001) (citing *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir.1986)). A common question is one that, when answered as to one class member, "will affect all or a significant number of the putative class members." *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.1993).

To prevail on their UPL claim, Plaintiffs must prove that Countrywide received compensation, directly or indirectly, for preparing (or participating in the preparation of) legal instruments affecting title to real property. *See* TEX. GOV'T CODE ANN. § 83.001 (Vernon 1998). The following facts are common to all class members regarding the UPL claim:

- Countrywide prepares the initial set of legal instruments affecting title to real property via its employees and EDGE;
- Countrywide faxes the initial set of legal instruments to Gregg & Valby for review by either legal or non-legal personnel;
- Gregg & Valby legal or non-legal personnel suggest that Countrywide make alterations, if necessary, to the legal instruments via fax or telephone;
- Countrywide employees make any changes suggested by Gregg & Valby and then prepare a final set of legal instruments affecting title to real property via EDGE which are sent to the title company for use at closing; and
- Countrywide receives a portion of each document preparation fee, except on FHA loans and FHA and VA refinances, from Gregg & Valby for Countrywide's preparation (and/or assistance in the preparation) of legal instruments affecting title to real property.

The common legal issue is whether these facts establish the unauthorized practice of law in Texas, a violation of sections 83.001 and 83.006 of the Texas Government Code. Thus, common legal and factual issues lie at the heart of each class member's UPL claim.

■ The following facts are common to all class members regarding the RESPA claim:

- Pursuant to an agreement reached in the early 1990's, Countrywide's retail division hired Gregory Gregg & Associates (now Gregg & Valby) for all of Countrywide's document preparation work in Texas;
- Countrywide prepares (and/or assists in the preparation of) the legal instruments affecting title to real property;
- Gregg & Valby pays Countrywide a portion (approximately 60%) of each document preparation fee; and
- Such payment by Gregg & Valby to Countrywide is not reflected on the HUD–1 or disclosed to the buyer or seller.

The common legal issue arising from these facts is whether Countrywide's receipt of compensation from Gregg & Valby for preparing legal instruments affecting real property constitutes an illegal kickback, referral fee, or fee splitting arrangement under RESPA. *See* 12 U.S.C. § 2607(a)–(b). Accordingly, Plaintiffs have met their burden of demonstrating that their claims are typical of the claims of the class. *See* FED. R. CIV. P. 23(a)(3).

### 3. TYPICALITY

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "Like commonality, the test for typicality is not demanding." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir.1999). Typicality exists when the claims of named and unnamed plaintiffs have a common source and rest upon the same legal and remedial theories. *Id.*

■ In the instant case, Plaintiffs' claims arise from the same course of conduct by Countrywide that gives rise to the claims of the other putative class members—specifically, Countrywide's receipt of compensation for the preparation of legal instruments that affect title to real property in Texas. Regardless of whether the borrowers or sellers (or both) who make up the putative class paid a document preparation fee, Plaintiffs are typical of anyone who paid a document preparation fee, a portion for which was thereafter paid to Countrywide by Gregg & Valby for

the preparation of legal instruments affecting title to real property in Texas.

Countrywide argues that Plaintiffs are not typical of the class because Plaintiffs do not contend that the document preparation fee paid was excessive. This assertion is unfounded. The Texas UPL statute prohibits a person who is not an attorney licensed in Texas from receiving a fee for preparing legal instruments that affect title to real property. TEX. GOV'T CODE ANN. § 83.001 (Vernon 1998). The statute is devoid of any requirement that the fee charged or received be excessive. *See id.* RESPA prohibits unlawful kickbacks and referral fees. 12 U.S.C. § 2607 (2001). As with the Texas UPL statute, RESPA does not require that the kickback or referral fee be excessive. *See id.*

Countrywide further argues that Plaintiffs are not typical of potential third parties (aside from the borrower and seller) who may have paid the document preparation fee reflected on the HUD-1. However, Countrywide did not present any evidence that a third party ever paid a document preparation fee reflected on a HUD-1. Moreover, in the event that some third party did pay the document preparation fee reflected on the HUD-1, such individual or entity would not fall within the current class definition. Accordingly, Plaintiffs have met their burden of demonstrating that their claims are typical of the claims of the class. *See* FED. R. CIV. P. 23(a)(3).

*4. ADEQUACY*

■ Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."[2] FED. R. CIV. P. 23(a)(4). The class representatives' interests must be aligned with, and not antagonistic to, unnamed class members. *Mullen,* 186 F.3d at 625–26. A sufficient alignment of interests exists when "all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class." *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195,

208 (5th Cir.1981); *Bertulli,* 242 F.3d at 298 n. 33 (adequacy was present when class representatives did not seek relief at the expense of unnamed class members).

■ In the instant case, Plaintiffs' interest is to stop Countrywide's preparation of legal instruments affecting title to real property and Gregg & Valby's undisclosed payment of fees for these services to Countrywide. Further, Plaintiffs seek reimbursement of the complained of fee. Plaintiffs have no interests that are adverse to the class as Plaintiffs do not seek any benefit aside from the class recovery. Plaintiffs' interests are therefore sufficiently aligned with those of the putative class members. Plaintiffs have met their burden of demonstrating that they will fairly and adequately protect the interests of the proposed class. *See* FED. R. CIV. P. 23(a)(4).

Given the foregoing, the Court determines that Plaintiffs have met their initial burden of establishing the Rule 23(a) requirements for class certification. The Court thus turns to the question of whether the class is maintainable pursuant to Rule 23(b)(3).

### B. RULE 23(B)(3) REQUIREMENTS

Rule 23(b)(3) provides that a class action may be maintained if the Rule 23(a) factors are met and "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). The district court should consider the following factors in making its predominance and superiority determination under Rule 23(b)(3):

(1) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(2) the extent and nature of any litigation concerning the controversy already

---

2. The district court must also find that the lawyers who will be responsible for trying the case are competent to pursue the action. *E.g., Roper v. Consurve, Inc.,* 578 F.2d 1106, 1112 (5th Cir. 1978). In this case, the lawyers for the proposed class are with the firms of Carrigan, Lapin &

Landa, L.L.P., Williams Bailey Law Firm, L.L.P., and Berg & Androphy. These lawyers have extensive experience and expertise in class action litigation. Moreover, Countrywide concedes that Plaintiffs' counsel is adequate.

commenced by or against members of the class;

(3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(4) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23(b)(3)(A)–(D). In making this determination, the district court must consider variations in state law and must also address how a trial on the merits would be conducted. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996).

### 1. INDIVIDUAL CONTROL OVER LITIGATION

The first factor, the interest of class members to control litigation individually, matters mainly when absent class members have personal injury claims. *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3rd Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). When only economic losses are at issue, this interest to personally control the litigation is small.

In the instant case, the pertinent inquiry for all class members regarding the UPL claim is whether Countrywide's receipt of compensation for its work in preparing the legal instruments affecting title to real property violates Chapter 83 of the Texas Government Code. Such inquiry is ultimately a matter for the Court. However, certain underlying factual issues must first be resolved by a jury via special interrogatories. These underlying factual issues are consistent among all putative class members. There is no need for individualized inquiry into the "ordinary and reasonable" nature of the alleged clerical services at the liability stage because it is the practice itself (i.e., the arrangement between Countrywide and Gregg & Valby) that is at issue. If Plaintiffs are successful in proving that the practice itself does not qualify as "ordinary and reasonable"[3] clerical services at the liability stage,

damages can be calculated by a simple formula based on the dollar amounts set forth in the putative class members' HUD–1 statements and the fee splitting schedule used by Countrywide and Gregg & Valby. Accordingly, the interest of class members to control litigation individually regarding the UPL claim is minimal.

Similarly, the pertinent inquiry for all class members regarding the RESPA claim is whether Countrywide and Gregg & Valby engaged in an illegal fee split, kickback, and/or referral arrangement. Again, this inquiry is consistent among all putative class members. There is no need for individualized inquiry into the "reasonable relationship"[4] of the alleged services rendered by Countrywide at the liability stage because it is the practice itself (i.e., the arrangement between Countrywide and Gregg & Valby) that is at issue. If Plaintiffs are successful in proving that the practice itself is bears no reasonable relationship at the liability stage, damages can be calculated by a simple formula based on the dollar amounts set forth in the putative class members' HUD–1 statements and the fee splitting schedule used by Countrywide and Gregg & Valby. Accordingly, the interest of class members to control litigation individually regarding the RESPA claim is minimal.

Moreover, the vast majority of class members would not pursue their claims individually due to the small amount of damages that would be recoverable in each case. As the litigation costs of each individual suit would greatly outweigh any possible recovery, this type of case is particularly well suited for class treatment. *See Amchem*, 521 U.S. at 617, 117 S.Ct. 2231. Accordingly, the Court finds that the first factor weighs in favor of finding predominance and superiority.

---

3. Countrywide contends that "Section 83.002 [of the Texas Government Code] permits law firms such as Gregg & Valby to obtain reimbursement for 'secretarial, paralegal or other ordinary and reasonable expenses necessarily and actually incurred' in the preparation of legal instruments."

4. Countrywide contends that "RESPA and the regulations thereunder expressly permit 'the pay-

ment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed' so long as the payment or reimbursement has a 'reasonable relationship' to the market value of the goods or services provided. 12 U.S.C. § 2607(c); 24 C.F.R. § 3500.14(g)(2)."

### 2. & 3. OTHER LITIGATION & CONCENTRATION IN THIS FORUM

The parties have notified the Court of two related cases: *Sergio Ruiz v. Countrywide Home Loans, Inc.*, Civ. No. SA–99–CA–364–HG (W.D.Tex. filed April 21, 1999) and *Tommy and Vicki Aven v. Emerald Funding Co., Ltd.*, Civ. No. H–00–72 (S.D.Tex. filed January 10, 2000). These cases, however, are distinguishable from the instant action. The *Ruiz* case is based upon Countrywide's wholesale mortgage business, whereas the instant case is based upon Countrywide's residential mortgage business. In the *Aven* case, the lender defendant is Emerald Funding Co., Ltd., not Countrywide. In fact, Countrywide is not a party in the *Aven* case. Accordingly, other pending litigation has no bearing on the issue of class certification in the instant case.

Furthermore, the proposed class in the instant case is entirely comprised of individuals with residential real estate ties to Texas. Houston is as good a forum as any other locale in Texas. Neither party contests this issue. Accordingly, the Court finds that the second and third factors weigh in favor of finding predominance and superiority.

### 4. MANAGEABILITY

The fourth factor addresses the difficulties likely to be encountered in the management of a class action. Countrywide raises numerous arguments relating to the manageability inquiry, including the possibility of counterclaims asserted against individual class members, the fact that this is not a negative value suit, constitutional concerns about raising defenses, the Plaintiffs' proposed trial management plan and class ascertainability. As discussed below, the Court is unpersuaded by these arguments.

■ Countrywide first contends that there is a possibility that it will assert counterclaims against individual class members, thereby precluding certification of the class. Countrywide argues that as much as five percent (5%) of the proposed class is delinquent in their accounts with Countrywide. Having considered the impact of such threatened counterclaims on certification, *see George v. Beneficial Fin. Co. of Dallas*, 81 F.R.D. 4, 6–7 (N.D.Tex.1977), the Court determines that the counterclaim issue does not bar certification under these circumstances.

■ The mere prospect of speculative counterclaims does not defeat certification. In *Douglas v. NCNB Texas Nat'l Bank*, 979 F.2d 1128 (5th Cir.1992), the Fifth Circuit rejected the argument that a creditor's counterclaim to collect a debt is compulsory in a class action suit against the creditor. *Id.* at 1130. Specifically, the Court held that the federal counterclaim rule, Rule 13(a) of the Federal Rules of Civil Procedure, is inapplicable if it abridges, enlarges, or modifies a plaintiff's or defendant's substantive rights. *Id.* Here, application of the compulsory counterclaim rule would abridge Countrywide's substantive rights and enlarge Plaintiff's substantive rights because it would force Countrywide to pursue its judicial remedy (counterclaim for non-payment) as opposed to its non-judicial remedy (foreclosure). "Under Texas law, lenders have a substantive right to elect judicial or non-judicial foreclosure in the event of a default, and debtors have no right to force the lender to pursue a judicial foreclosure remedy." *Id.*

Moreover, in *Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir.1978), the Fifth Circuit encouraged trial courts to use their case management powers to prevent counterclaims from undermining class actions. *Id.* at 1116. "[T]he potential assertion of counterclaims against these few members of the proposed class cannot be allowed to defeat an otherwise valid class action when to do so would effectively deprive thousands of class members of the relief to which they are entitled." *Id.* Similarly, in the instant case, it would be patently unfair if issues relating to only five percent (at most) of the proposed class precluded ninety-five percent of the proposed class from recovery. Accordingly, Countrywide's speculative counterclaims of delinquent payment do not constitute a legitimate bar to certification, based on the Fifth Circuit's statement in *Roper*. *See id.*

Additionally, the counterclaim issue does not make the case unmanageable at trial. First, the Court has the authority to sever such counterclaims, if they arise. Second, jury instructions may be crafted so as to eliminate juror confusion regarding the effect

of such counterclaims. Third, the Court has the authority to create subclasses. Accordingly, the Court determines that Defendants' allegations of potential counterclaims do not bar certification in this case.

Countrywide next contends that certification of the class is precluded due to the fact that this is not a negative value suit. "A negative value suit is one in which the 'stakes to each member [are] too slight to repay the cost of the suit.'" *Ford v. Nylcare Health Plans of the Gulf Coast, Inc.*, 190 F.R.D. 422, 427 (S.D.Tex.1999) (citation omitted). This case, however, *can* be characterized as a negative value suit, as the recovery for each plaintiff would be insignificant in comparison to the cost of prosecuting each individual action. Despite the fact that attorney's fees and costs are recoverable under both claims at issue in the instant case, it does not necessarily follow that potential plaintiffs will exercise their right to file an individual suit for such a small recovery of damages. The cost of a suit is not measured in court costs and attorney's fees alone. It includes the time and effort that must be asserted by each individual plaintiff in submitting to interviews, depositions, time off from work, time away from the family, etc. Such time and effort further results in lost income which may exceed an individual plaintiff's potential recovery.

■ Even assuming, arguendo, that this case could not be deemed a negative value suit, such fact does not preclude class certification. Contrary to Countrywide's assertions, the Court in *Ford* simply held that "this suit cannot be classified as a 'negative value suit.'" *Id.* at 427. The Court did not hold that a non-negative value suit could not be certified as a class action. Accordingly, the Court determines that Countrywide's allegation that this is not a negative value suit does not bar certification in this case.

Countrywide next contends that it has a due process right to present all defenses as to each class member. The Court fails to see how this statement precludes class certification. At issue in the instant case is the practice by Countrywide and Gregg & Valby regarding the preparation of legal instruments affecting title to real property. As discussed *supra*, an analysis of the practice does not require a case-by-case analysis of each class member. Accordingly, the Court determines that Countrywide's allegation that it will be denied its due process rights does not bar certification in this case.

■ Countrywide next contends that "Plaintiffs have failed to meet their **obligation** of supplying a trial plan that satisfies the Court that the proposed class action is manageable. *See, e.g., Spence v. Glock*, 227 F.3d 308, 313 (5th Cir.2000)." (Emphasis added). As an initial matter, the *Spence* case does not stand for Countrywide's assertion. *Spence* does not state that a class representative has an "obligation" of supplying a trial plan. Rather, *Spence* merely held that the plaintiffs' failure to submit a plan to manage a sub-class was a factor to consider in the court's manageability analysis. *Id.* Plaintiffs have informed the Court as to how they intend to proceed with the instant case, and will no doubt continue to do so on a regular basis. Accordingly, the Court determines that Countrywide's allegation that Plaintiffs failed to file an appropriate trial plan does not bar certification in this case.

Countrywide finally contends that the proposed class is unascertainable because it "lacks superiority and manageability under Rule 23(b)(3) as highly individualized inquiries would be required to determine the initial matter of who are the members of the class." The Court finds Countrywide's argument unpersuasive. As discussed *supra*, the class is ascertainable and any variances in the payment of the relevant fees can be addressed while calculating each class members' damages, if liability is proved. Accordingly, the Court determines that Countrywide's allegation that the class is unascertainable does not bar certification in this case.

Based upon the foregoing, the Court is of the opinion that a class action—rather than innumerable individual actions—is the better method of litigating this dispute. The Court hereby

ORDERS that Plaintiffs Motion for Class Certification of a class consisting of:

All persons in Texas who, as part of a residential real estate loan transaction with Countrywide from January 10, 1996 to the

present, were charged a "Document Preparation Fee" (or portion of a document preparation fee) on their HUD–1 Settlement Statement, where Countrywide received a portion of the document preparation fee, and Gregg & Valby is listed as the provider of document preparation services.
is GRANTED.