Donald Lee O'HARA, Jr., et al., Appellants,

v.

NORTH AMERICAN MORTGAGE COMPANY, Appellee.

No. 12–01–00193–CV.

Court of Appeals of Texas, Tyler.

June 28, 2002.

---

8. *Ante,* at 177.

10. *See id.,* at 175–76.

Karen D. Bishop, Bishop & Bishop, Gilmer, Mark C. Brodeur, Brodeur & Evans, Dallas, Mike C. Miller, Mike Miller, P.C., Marshall, Jonathan R. Moothart, Bowerman, Bowden & Moothart, P.C., Traverse City, MI, for Appellants.

Tracy Crawford, Ramey & Flock, Tyler, R. Bruce Allensworth, Gregory D. Smith, for Appellee.

Panel consisted of WORTHEN, J., and GRIFFITH, J.

JIM WORTHEN, Justice.

The trial court certified a class action brought by the O'Haras against North American Mortgage Company for engaging in the unauthorized practice of law, and charging for those services. North American appealed, and this court reversed and remanded for decertification, without prejudice for refiling. North American then filed a petition for review with the supreme court, which was denied. The O'Haras amended their Motion for Class Certification, re-defining the class in order to satisfy our concerns about compulsory counterclaims. The trial court denied the Motion. In two issues, the O'Haras complain that the trial court abused its discretion when it refused to certify the class. We reverse and remand for certification of the class.

### BACKGROUND

The facts, as stated in this court's prior opinion, are not being disputed, and are as follows:

An evidentiary hearing was held in which the parties called witnesses and admitted documents into evidence. The undisputed evidence presented at the class certification hearing demonstrated that North American has a standard procedure through which it prepares loan documents. In connection with the O'Hara transaction, in October of 1994, North American approved a loan in the amount of $60,700 relating to the transfer of property through a general warranty deed. A non-attorney "loan closer" for North American then originated and documented the O'Hara loan using their computer system. Specifically, she input "variable information" into the program by responding to questions on her computer screen. In combination, those entries and the computer system created the O'Haras' deed of trust, note

and general warranty deed, as well as other non-title loan documents.

The ultimate issue in the underlying case is whether this standardized system for the preparation of loan documents, which requires the input of data into the computer by clerical staff, constitutes the unauthorized practice of law and violates Texas Government Code Section 83.001. TEX. GOV'T CODE ANN. § 83.001(a) (Vernon 1998). Section 83.001 states that, except for certain professionals, no person may "charge or receive, either directly or indirectly, any compensation for all or any part of the preparation of a legal instrument affecting title to real property, including a deed, deed of trust, note, mortgage, and transfer or release of lien." *Id.* The statute provides that any sums charged or received in violation of this provision must be returned. TEX. GOV'T CODE ANN. § 83.005. It is undisputed that each borrower for which North American processes documents is charged a $125.00 "computer/clerical" fee.

*North American v. O'Hara, et al.,* No. 12–99–00394–CV (Tex.App.-Tyler May 29, 2000, pet. dism'd w.o.j.) (not designated for publication).

In their second issue, the O'Haras argue that the only issue before this court is whether the new class definition meets the requirements of our prior decision, in which we held that all but the adequacy of representation requirement were satisfied. *Id.*[1] North American responds that *Southwestern Refining Co. v. Bernal,* 22 S.W.3d 425 (Tex.2000), significantly changed the parameters under which certification of class actions should be considered and, therefore, the law of the case doctrine does not preclude reconsideration of all the issues relevant to class certification, particularly that of predominance.

## LAW OF THE CASE

■ The law of the case doctrine provides that the initial determination of questions of law will generally be held to govern the case throughout the subsequent stages of the case. *See Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986). The doctrine applies only to questions of law and not to questions of fact. *Id.* It operates to narrow the issues and provide uniformity of decisions and judicial economy. *Id.* However, when, as here, there has been a change in the controlling law between the time of the first and the second determinations, the law of the case doctrine does not preclude a court from reconsidering its previous determination. *See McCrea v. Cubilla Condominium Corp.,* 769 S.W.2d 261, 263 (Tex.App.-Houston [1st Dist.] 1988, writ denied); *see also Carroll v. State,* 42 S.W.3d 129, 131 (Tex. Crim.App.2001). The supreme court's decision in *Bernal* constitutes such an intervening decision. Thus, our prior determination regarding the O'Haras' case is not binding "law of the case." Accordingly, we overrule issue two.

## STANDARD OF REVIEW

The O'Hara's first issue complains that the trial court erred when it denied their Motion for Class Certification. An appellate court should reverse a trial court's certification order only if the record shows that the trial court committed a clear abuse of discretion. *E & V Slack, Inc. v. Shell Oil Co.,* 969 S.W.2d 565, 567 (Tex. App.-Austin 1998, no writ). An abuse of discretion occurs if the trial court acts without reference to any guiding principles

---

1. In our prior opinion and in the interest of justice, we analyzed all requirements of class certification, not just that of adequacy of representation, upon which we based our reversal.

or acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985). A failure to analyze or apply the law correctly is an abuse of discretion. *Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex.1996); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). And an appellate court, in reviewing a trial court's refusal to certify, should not err in favor of certification. *See Bernal*, 22 S.W.3d at 434–35.

Although the ultimate issue at the trial court level is whether North American engaged in the unauthorized practice of law, the question before *us* is whether the propriety of its conduct can and should be decided on a class-wide basis. This court "may not consider the substantive merits of the case, and class proponents are not required to prove a prima facie case in order to be certified as a class." *Reserve Life Ins. Co. v. Kirkland*, 917 S.W.2d 836, 842 (Tex.App.-Houston [14th Dist.] 1996, no writ), *rev'd on other grounds, Bernal*, 22 S.W.3d at 434. However, to make a proper analysis, "going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. American Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996).

## CLASS CERTIFICATION

Under Rule 42, all class actions must satisfy four requirements: 1) numerosity ("the class is so numerous that joinder of all members is impracticable"); 2) commonality ("there are questions of law or fact common to the class"); 3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and 4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). TEX.R. CIV. P. 42(a).

### Adequacy of Representation

■ In our opinion of May 29, 2000, we held that the requirement of adequacy of representation in this case was not satisfied and, therefore, the trial court erred when it granted the O'Haras' Motion for Class Certification. Adequacy of representation requires that the class representatives' interests cannot be "antagonistic" to the interests of the rest of the class. TEX.R. CIV. P. 42.(a). Secondly, the class representatives, through their counsel, must show the court that they will vigorously prosecute the action. *Id.* The Texarkana Court of Appeals has listed certain relevant factors to consider in determining if the adequacy of representation element is satisfied: 1) adequacy of counsel; 2) potential for conflicts of interest; 3) personal integrity of the plaintiffs; 4) whether the class is unmanageable because of geographic limitations; 5) whether the representative plaintiffs can afford to finance the class action; and 6) the representative plaintiffs' familiarity with the litigation and his or her belief in the legitimacy of the action. *Glassell v. Ellis*, 956 S.W.2d 676, 682 (Tex.App.-Texarkana 1997, no writ). North American argued, and we agreed, that the adequacy of representation requirement was not satisfied in this case because of conflicts of interest between the class representatives and numerous putative class members.

In *North American*, we explained that: Under Rule 97(a), if a class is certified, North American will be obligated to file compulsory counterclaims against hundreds of putative class members who were in monetary or non-monetary default on their home mortgage loans at the time this lawsuit was filed. (cite omitted) If North American does not file these counterclaims, it will risk losing its

remedy of judicial foreclosure and other judicial remedies against defaulting borrowers.... There is a conflict of interest, therefore, between the representative plaintiffs and putative members of the class who were in default on their loans on the date this lawsuit was filed.... Because the trial court's present definition fails to meet class certification's adequacy of representation requirement, we reverse the trial court's judgment and remand to decertify the class. Our action is without prejudice to a further attempt by borrowers to seek certification of a class consistent with this opinion.

*North American,* pg. 7–8. Our holding was based upon Texas and Fifth Circuit case law that a lender's judicial remedies are not compulsory counterclaims in a suit by the borrower only if the lender also has contracted for non-judicial remedies. *See Thurman v. FDIC,* 889 F.2d 1441 (5th Cir.1989); *Kaspar v. Keller,* 466 S.W.2d 326 (Tex.Civ.App.-Waco 1971, writ ref'd n.r.e.).

In the current case before us, the O'Haras submitted the following revised class definition:

> [T]hose persons or other entities (i) with respect to whom North American Mortgage Company acted as mortgagee regarding real property located within the State of Texas, and (ii) who were, from October 1, 1994, to the present, charged a "document preparation" or "computer/clerical" fee by North American Mortgage Company for services provided in connection with the preparation of a promissory note, deed of trust or deed, *excluding, however, those borrowers whose deeds of trust do not convey to the mortgagee/lender a right of non-judicial foreclosure.*

The class is the same as was ordered decertified by our previous opinion, except for the exclusion of borrowers who did not convey to North American a right of non-judicial foreclosure.

At the hearing on remand, the trial court took judicial notice of everything in evidence at the original certification hearing. However, there had been no evidence whatsoever regarding the presence or absence of non-judicial remedies in the class members' loan documents. The only new evidence tendered at the second hearing was North American's stipulation that every borrower's deed of trust provides North American with power of sale as well as a right to exercise whatever judicial remedies may be available to it. This admission, plus the new class definition, answers our concerns about compulsory counterclaims; therefore we hold that the adequacy of representation requirement is now satisfied.

### Predominance

If the 42(a) elements are satisfied, the trial court must then determine if the class action is maintainable. TEX.R. CIV. P. 42(b). There are four subsections of 42(b), at least *one* of which must be satisfied before class certification is appropriate:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) where the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

(4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods *for the fair and efficient adjudication* of the controversy.

TEX.R. CIV. P. 42(b). North American maintains that not one of the 42(b) requirements are satisfied; consequently, the class action is not maintainable. We agree that (1), (2) and (3) are not satisfied; therefore, we will only address the issues of predominance and superiority as required by 42(b)(4).

Under Rule 42, "common" questions *must* predominate over questions affecting only individual class members. TEX.R. CIV. P. 42(b)(4). A common question exists when the answer as to one class member is the same as to all. *Spera v. Fleming, Hovenkamp & Grayson, P.C.,* 4 S.W.3d 805, 810 (Tex.App.-Houston [14th Dist.] 1999, no writ). Common questions that do not produce common answers do not satisfy the Rule 42 commonality requirement. *Wente v. Georgia–Pacific Corp.,* 712 S.W.2d 253, 257 (Tex.App.-Austin 1986, no writ). The "predominance requirement . . . is one of the most stringent prerequisites to class certification." *Bernal,* 22 S.W.3d at 433. Courts determine if common issues predominate by identifying the substantive issues that will control the outcome of the litigation, assessing which issues will predominate, and determining if the predominating issues are, in fact, common to the class. *Id.* at 434. The test for predominance is not whether common issues outnumber uncommon issues, but whether common or individual issues will be the subject of most of the litigant's and court's efforts. If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate. *Id.* Ideally, a judgment in favor of the named plaintiffs should decisively settle the entire controversy, and all that should remain is for other class members to file proofs of claim. *Id.*

*Analysis*

■ North American maintains that the predominance requirement, under the new law of *Bernal,* is not satisfied; thus the trial court did not abuse its discretion when it denied the O'Haras' Motion for Class Certification. Its main contention is that individual issues predominate, since each transaction would have to be reviewed to determine if the North American employee creating the documents used any discretion in the process of creating those documents. It claims that each borrower's loan is unique and that the same documents are not generated for each borrower. North American takes the position that the trial court would be forced to receive evidence at trial from both the plaintiffs and the defendants pertaining to the factual circumstances of each putative class member's transaction, which precludes the use of a class action. We disagree.

The key issue in this case is whether North American's conduct in charging a fee for preparing documents affecting title to real estate, which admittedly is the

same in the case of each class member, does or does not violate the provisions of Tex. Gov't Code Ann. § 83.001. The allegedly varying involvement of North American's lawyers in these transactions is irrelevant to the O'Haras' claims. If North American is correct that having its lawyers review and direct the correction of North American's legal document preparation work legitimizes North American's conduct, then the claims of the entire class fail. If, on the other hand, the O'Haras are correct that North American cannot insulate itself from liability for violating Tex. Gov't Code Ann. § 83.001 merely by having a law firm review the real estate documents prepared by North American, then the claims of the entire class succeed.

North American argues that both *Bernal* and *Peltier Enterprises, Inc., and Bank of America v. Hilton, et al.*, 51 S.W.3d 616 (Tex.App.-Tyler 2000, pet. denied) preclude a finding that the predominance issue is satisfied in this case. We disagree and distinguish both *Bernal* and *Peltier* from the present case. In *Bernal*, nine hundred and four plaintiffs sought class certification in their suit against a refining company alleging personal injuries resulting from a tank explosion at a refinery. *Bernal*, 22 S.W.3d at 428–29. The plaintiffs alleged that the tank explosion sent a plume of toxic smoke into the air and that soot and ashes fell onto their residences and surrounding areas. *Id.* at 429. The extent of the personal injuries varied greatly among the class members, but claims included respiratory difficulties, skin irritation, eye irritation, headaches, nausea, and death to their lawns, plants and pets. *Id.*

The court in *Bernal* held that the trial court's class certification order was an abuse of discretion because common issues of law and fact did not predominate over individual issues. *Id.* at 439. First, the court considered that the geographical proximity to the tank explosion in Corpus Christi varied widely from one plaintiff to another. *Id.* at 436. Some plaintiffs were less than one mile away, while others were as far away as Beaumont, which is over 250 miles away. *Id.* Next, some plaintiffs were outside when the explosion occurred while others were inside their homes. *Id.* For those claiming damage to their lawns, plants and pets, homes ranged from one-half mile from the explosion site, up to nine miles away. *Id.* Also, there was evidence that each plaintiff suffered different exposure because the wind was blowing on the day of the accident and directed the plume of smoke away from some of the residents' homes. *Id.*

The court found that the individual issues of each class member's exposure, location, age, medical history, sensitivity and credibility on the issues of causation and damages would predominate over the common issues of liability, and whether the plume of smoke was capable of causing the alleged injuries. *Id.* Although the plaintiffs argued that models, formulae, and damage brochures would allow them the opportunity to litigate these individual issues in six to eight weeks, the court stated that the defendants were entitled to challenge the credibility and responsibility for each of the personal injury claims. *Id.* The court concluded that the class action would result in a number of individual trials if the defendants chose to challenge each of the plaintiffs on the issues of credibility and responsibility. *Id.* Thus, class treatment would no longer be superior to other methods of adjudication (namely individual lawsuits) and the requirements of Rule 42(b)(4) would no longer be satisfied. Therefore, the trial court abused its discretion by certifying the class. *Id.*

In *Peltier*, the plaintiffs claimed that a car dealer and bank engaged in a fraudu-

lent practice of having the bank provide a lower interest rate to a dealer, who then kept the differential and supplied the loan to a consumer at a higher rate. *Peltier*, 51 S.W.3d at 619–20. At least two of the elements of fraud required individualized proof. It was thus clear that answering the questions of materiality and reliance as to one plaintiff did not answer the question as to other putative class members. *Id.* at 623. Also, a plaintiff with knowledge about indirect lending or with years of experience in the car-selling business would not have been able to show "unconscionable" conduct. *Id.* at 624. Further, a class member who could not obtain credit elsewhere was in a different circumstance than one who could. The question remained as to what each class member could or would have done if he or she had known of the transaction between the car dealer and the bank. *Id.* at 623–24. Thus, the resolution of individual issues was likely to be an overwhelming and unmanageable task for a single jury. Consequently, we held that the trial court abused its discretion when it certified the class.

Such is not the case before us, as there are no individual questions to be answered which would require taking testimony from each of the putative members. We hold, therefore, that the common issues predominate over the individual issues in this case and, thus, the predominance requirement of 42(b)(4) is satisfied.

### Superiority

A class action is superior to other methods of adjudication where any difficulties which might arise in the management of the class are outweighed by the benefits of classwide resolution of common issues. *See Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 654 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd w.o.j.). In assessing the superiority of a class action, the court may consider: 1) class members' interest in resolving the common issues by class action; 2) the benefit from discovery already commenced; and 3) the trial court's time and effort invested in familiarizing itself with the dispute. *See* Tex.R. Civ. P. 42(b)(4); *Weatherly*, 905 S.W.2d at 654. We hold that, based upon our previous discussion of predominance, class certification in the instant case is appropriate because a class action is a superior method of adjudication, and it would be manageable by one jury as required by Rule 42(b)(4).

Because the adequacy of representation, predominance and superiority requirements are clearly present in this case, we hold that the trial court erred when it denied the O'Haras' Amended Motion for Class Certification.[2]

### A Trial Plan

It is improper to certify a class without knowing how the claims can and will likely be tried. *Bernal*, 22 S.W.3d at 435. Individual scrutiny by the trial court is necessary to ensure that certification does not "restrict a party from presenting viable claims or defenses without that party's consent." *Id.* It is therefore incumbent upon the trial court to provide a trial plan within the certification order to identify the substantive issues to be decided in the case and state how the claims would likely be tried. *Id. see also Henry Schein, Inc.*

---

**2.** Through a cursory search, we located four other cases, both in Texas and other states, where class action suits were certified based upon the same or similar causes of action and fact scenarios as this case. *See Perkins v. CTX Mtg. Co.*, 137 Wash.2d 93, 969 P.2d 93 (Wash. 1999); *Michalowski v. Flagstar Bank, FSB*, 2002 WL 113905, 2002 U.S. Dist. LEXIS 1245 (N.D. Ill. Jan. 24, 2002, no pet.); *O'Sullivan v. Countrywide Home Loans, Inc.*, 202 F.R.D. 504 (S.D.Tex.2001, no pet.); *Kim v. Desert Document Svcs.*, 101 Wash.App. 1043, 2000 WL 987005, 2000 Wash.App. LEXIS 1216 (Wash.Ct.App. July 17, 2000, pet.denied).

*v. Stromboe,* 28 S.W.3d 196, 204–06 (Tex. App.-Austin 2000, pet. dism'd w.o.j.). More specifically, a *Bernal* trial plan will (1) identify each factual and legal issue that will need to be decided in the case; (2) determine what individual issues exist in the case and enunciate precisely how these claims will be presented at trial; and (3) propose a time table for how long the trial would take. Because the trial court in this case denied certification, it did not create a trial plan. The trial court shall do so upon remand.

We reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.